Robert W. SEEBACH, Doris Spors, Bernice Benedict Popelka, Joyce Nalepinski and Michael Cull, Plaintiffs-Appellants,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Defendant-Respondent.†

Court of Appeals

No. 79–267. *Argued September 27, 1979.—*
*Decided May 23, 1980.*
(Also reported in 295 N.W.2d 753.)

† Petition to review denied.

For the plaintiffs-appellants there were briefs by *Robert W. Seebach* and oral argument by *Robert W. Seebach* of West Bend.

For the defendant-respondent Public Service Commission of Wisconsin there was a brief by *Bronson C. La Follette,* attorney general, *Steven M. Schur,* chief counsel, and *Steven Levine,* assistant chief counsel, and oral argument by *Steven Levine,* assistant chief counsel.

For the defendant-respondent Wisconsin Telephone Company there was a brief by *Philip L. Wettengel* and *Michael A. Tanner* of Milwaukee, and oral argument by *Michael A. Tanner.*

Before Donlin, J., Bablitch, J. and Dykman, J.

DYKMAN, J.   This is an appeal, pursuant to ch. 227, Stats., from a final judgment entered February 9, 1979, in the Dane County Circuit Court affirming an order of the Wisconsin Public Service Commission (PSC). On February 28, 1978, the PSC's order denied petitions[1] from residents of Hartford, Slinger, West Bend and Allenton which requested the commission to order the Wisconsin Telephone Company (WTC) and the General Telephone Company (GTC) to provide extended area telephone service into the Milwaukee metropolitan area.[2]

---

[1] These petitions were submitted pursuant to sec. 196.26(1), Stats., which provides:

(1) Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by any twenty-five persons that any of the rates, tolls, charges or schedules or any joint rate or any regulation, measurement, practice or act affecting or relating to the production, transmission, delivery or furnishing of heat, light, water or power or any service in connection therewith or the conveyance of any telephone message or any service in connection therewith is in any respect unreasonable, insufficient or unjustly discriminatory, or that any service is inadequate or cannot be obtained, the commission shall proceed, with or without notice, to make such investigation as it may deem necessary, but no order shall be entered by the commission without a formal public hearing.

[2] In their reply brief the appellants contend that the telephone companies are not parties to this appeal. The companies are, in

The first petition was filed with the PSC on November 6, 1972, by approximately 2,000 customers of WTC requesting one-way optional Milwaukee metroplan service at the West Bend exchange. The requested service would allow subscribers to call any of the approximately 23 telephone exchanges within the Milwaukee metropolitan calling area for an additional flat monthly rate. This metroplan would be optional and would operate only one way.

A second petition requesting this service for WTC customers at Hartford and for GTC customers at Slinger was consolidated with the first petition on November 1, 1974. A fourth exchange seeking this service, Allenton, was added after prehearing conferences were held on September 22 and October 10, 1975, and January 20, 1976.

These four exchanges serve a total of approximately 14,860 customers.

The petitioners claimed that the customers in the four areas in question had a definite need and desire for the expanded service for a variety of social, medical, professional and business reasons. They argued that similarly located communities, such as Oconomowoc, receive optional one-way metroplan service. Consequently, the four exchanges should not have to pay long distance toll rates, they asserted.

The PSC heard testimony and received exhibits at hearings on March 29–30 and October 18–19, 1976. In its February 28, 1978 order the PSC found that the adverse economic impact on the telephone companies who would provide the requested service outweighed the community of interest between the considered telephone ex-

fact, proper parties, having been properly certified by the PSC pursuant to sec. 227.16(1)(c), Stats. *See also Wis. Environmental Decade v. Public Service Comm.*, 84 Wis.2d 504, 520–34, 267 N.W. 2d 609 (1978).

changes. In denying the petition the PSC further found that telephone service to the petitioners was adequate in that their long distance telephone needs could be met by a variety of services already available to them.[3]

The petitioners sought a ch. 227 review in the circuit court alleging: (a) material error by PSC receipt of a petition from 20 Milwaukee area legislators, requesting denial of the service, without notifying all parties pursuant to sec. 227.13 (2), Stats.; (b) arbitrary and capricious action in denying the request; (c) insubstantial evidence in the record to support the PSC's decision; and, (d) discrimination in denying their petition when others similarly situated received the requested service; and in delaying a decision on the petition. The circuit court found no material error in receipt of the legislators' petition and upheld the PSC's decision in all respects. On appeal, we affirm.

The appellants raise six issues in this court:

(1) Did the PSC commit material error in admitting into evidence the ex parte petition of the 20 Milwaukee area legislators?

---

[3] Each exchange in question is able to call at least one other exchange without a toll charge. For instance West Bend customers can call six other exchanges and Allenton can call into West Bend without toll charge.

The other telephone long distance services the four exchanges receive include:

(a) Standard long distance service with rates which vary with the time of the call.

(b) Foreign exchange service which provides a customer with a metroplan telephone number and is designed for those who frequently call a particular foreign exchange.

(c) Call-Pak service whereby a customer may purchase a block of time within which calls may be made within a given distance.

(d) Tel-a-Visit service which offers flat rate long distance service for direct dial calling within Wisconsin during certain specified hours.

(2) Did the receipt of this petition impair the fairness of the proceedings and require the circuit court to remand the case to the PSC for further action?

(3) Did the PSC discriminate against the appellants by denying one-way optional metroplan telephone service after having extended such service to similarly situated communities?

(4) Did the PSC commit reversible error in deviating from prior practice without any explanation?

(5) Did the PSC erroneously equate "benefits" with "costs," thereby arbitrarily and effectively banning future extensions of metroplan telephone service?

(6) Did the PSC deny petitioners due process by delaying the proceedings for a period of years?

On appeal this reviewing court is only "to determine whether the circuit court erred in its determination." *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis.2d 408, 416, 280 N.W.2d 142, 146 (1979). Section 227.20, Stats., sets forth the scope of review trial courts have in reviewing separately questions of law, fact and procedure in agency decision making. The standards of review are defined by secs. 227.20(4), (5), (6), and (8).[4] In most

---

[4] Section 227.20, Stats., provides in pertinent part:

(4) The court shall remand the case to the agency for further action if it finds that either the fairness of the proceedings or the correctness of the action has been impaired by *a material error* in procedure or a failure to follow prescribed procedure.

(5) The court shall set aside or modify the agency action if it finds that the agency has *erroneously interpreted a provision of law* and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

(6) If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside

cases, reviewing courts determine only whether substantial evidence in the record supports the agency's decision. Sec. 227.20 (6) ; *Hamilton v. ILHR Dept.*, 94 Wis.2d 611, 617–18, 288 N.W.2d 857 (1980). In the instant appeal, however, the petitioners do not contest the sufficiency of the evidence. They instead assert procedural errors, and dispute the methods employed by the PSC in reaching its decision.

When procedural error is claimed, sec. 227.20 (4), Stats., provides:

The court shall remand the case to the agency for further action if it finds that either the fairness of the proceedings or the correctness of the action has been impaired by a *material error in procedure* or a *failure to follow prescribed procedure.* (Emphasis added.)

The petitioners state that the failure to notify them of the ex parte communication sent to the PSC by the Milwaukee legislators is a material violation of procedure mandated by sec. 227.13, Stats.[5] They argue that they

---

agency action or remand the case to the agency if it finds that the agency's *action depends on any finding of fact that is not supported by substantial evidence in the record.*

. . . .

(8) The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion *is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice,* if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but *the court shall not substitute its judgment for that of the agency on an issue of discretion.* (Emphasis added.)

[5] Section 227.13, Stats., provides:

(1) (a) In a contested case, no ex parte communication relative to the merits or a threat or offer of reward shall be made, before a decision is rendered, to the hearing examiner or any other official or employe of the agency who is involved in the decision-making process, by:

were denied the right to rebut this petition; that the petition exerted significant political pressure on the PSC; and, that receipt of the petition materially impaired the fairness of the proceedings.

We cannot find that the circuit court erred in finding no material error in receipt of this petition.

1. An official of the agency or any other public employe or official engaged in prosecution or advocacy in connection with the matter under consideration or a factually related matter; or

2. A party to the proceeding, or any person who directly or indirectly would have a substantial interest in the proposed agency action or an authorized representative or counsel.

(b) Paragraph (a)1 does not apply to an advisory staff which does not participate in the proceeding.

(c) This subsection does not apply to an ex parte communication which is authorized or required by statute.

(d) This subsection does not apply to an ex parte communication by an official or employe of an agency which is conducting a class 1 proceeding.

(e) This subsection does not apply to any communication made to an agency in response to a request by the agency for information required in the ordinary course of its regulatory functions by rule of the agency.

(2) A hearing examiner or other agency official or employe involved in the decision-making process who receives an ex parte communication in violation of sub. (1) shall place on the record of the pending matter the communication, if written, a memorandum stating the substance of the communication, if oral, all written responses to the communication and a memorandum stating the substance of all oral responses made, and *also shall advise all parties that the material has been placed on the record;* however, any writing or memorandum which would not be admissible into the record if presented at the hearing shall not be placed in the record, but notice of the substance or nature of the communication shall be given to all parties. Any party desiring to rebut the communication shall be allowed to do so, if the party requests the opportunity for rebuttal within 10 days after notice of the communication. The hearing examiner or agency official or employe may, if deeming it necessary to eliminate the effect of an ex parte communication received, withdraw from the proceeding, in which case a successor shall be assigned. (Emphasis added.)

On April 15, 1977, the PSC received the following communication signed by 20 Milwaukee area legislators:

The Public Service Commission is currently investigating the expansion of the Milwaukee Metropolitan phone system (Docket 6720–TV–3) to include the cities of West Bend, Slinger, Hartford and Allenton.

These cities are as much as 40 miles from Milwaukee, yet it is their desire to be part of the metropolitan phone system. It is obvious why. They wish to have their lives in the country as well as the conveniences of the city. We believe it is an unfair request to ask Milwaukee area residents to burden the cost of the expansion of the present system. The Telephone Company says extending the service to these distant communities would cost $170,000. The loss will have to be made up by other phone customers.

We urge the Public Service Commissioners to carefully consider these arguments when the final decision of expanding the Milwaukee Metropolitan phone system is made.

On April 15, 1977, PSC Commissioner Oestreicher sent a copy of the petition to the hearing examiner, directing him to forward it to all parties to the proceedings if "such is the requirement." He also wrote the state representatives who presented the petition, stating:

Since that case is now pending before the Commission and since the docket is closed, it is improper for me to comment on the merit of the case.

Under the rules governing this Commission your letter, the petition, and this correspondence constitute an ex parte communication. I am therefore causing a copy of said correspondence to be placed in the Commission file and causing a copy of same to be forwarded to all parties to the proceeding.

The hearing examiner drafted a letter to the parties, informing them of the petition pursuant to sec. 227.13(2), Stats. The PSC stated that this letter was inadvertently

never sent, however. A copy of this draft appears in the record.

In its decision the PSC acknowledged receipt of the legislators' petition which was "entered in the record in opposition to the service expansion as considered in this proceeding."

One obvious purpose of sec. 227.13, Stats., is to prevent procedural unfairness in contested cases, when *ex parte* communications which could bear on the outcome are received, by creating the opportunity for rebuttal. By fostering openness in the administrative decision-making process, sec. 227.13 decreases the opportunity for improper influence upon the decision makers.

It follows that material error occurs when a party not notified of an ex parte communication is prejudiced by the inability to rebut facts presented in the communication and where improper influence upon the decision-making appears with reasonable certainty.

The instant petitioners have not demonstrated that receipt of the petition prejudiced them to a material degree. They bear this burden of proof. *State ex rel. De Luca v. Common Council,* 72 Wis.2d 672, 695, 242 N.W. 2d 689 (1976) ; *State ex rel. Gregerson v. Board of Review,* 5 Wis.2d 28, 34–36, 92 N.W.2d 236 (1958); *McCulloch Interstate Gas Corp. v. F.P.C.,* 536 F.2d 910, 913 (10th Cir. 1976).

The petition presented no fact as "evidence" which was not otherwise admitted during the hearings and investigation. *Cf. Environmental Defense Fund, Inc. v. Blum,* 458 F. Supp. 650 (D.C. 1978), (case remanded where significant information bearing on highly complex technical issues was received ex parte by agency). The petition was not to be considered as evidence by the commission. Sec. PSC 2.35(5), Wis. Adm. Code. Thus, no

opportunity to rebut was necessary and those requesting the extended service were consequently not hurt by being precluded from rebuttal.

This ex parte communication is also an unlikely vehicle for undue political pressure. It threatens no political retaliation as in the case, relied upon by the petitioners, of *D.C. Federation of Civic Associations v. Volpe,* 459 F.2d 1231 (D.C. Cir. 1971) *cert. den.* 405 U.S. 1030 (1972). As a petition opposing the grant of extended area service it is similar to letters from legislators from the district in question which favored the requested service.

In the instant case, the PSC could not prevent receipt of this admittedly improper communication. It was nonetheless obligated to notify all parties of this ex parte contact. The PSC unfortunately failed to inform a vital party of the legislators' petition. Greater care should be taken to comply with sec. 227.13(2), Stats., in future cases. Nothing in the record indicates, however, that the PSC intended to suppress this communication. A draft of a letter from the hearing examiner about the petition and mention of it in the final PSC's decision raise a contrary inference.

Finally, we cannot find that this petition could have exerted an improper influence on the PSC when its decision was based on the proper factors with ample supporting evidence. The PSC stated that the primary factors it used in evaluating the request for extended area service were "the community of interest between the considered exchanges and the economic impact of the requested service." It also considered a third factor, the adequacy of existing services, in making its evaluation. We cannot say that the PSC could not find insufficient "community of interest" based upon a toll usage study for November, 1975, which showed a low number of calls from the petitioners' exchanges into the Milwaukee met-

roplan area.[6] We cannot say that the PSC could not conclude "that revenues produced by the provision of the requested service would not be adequate to fully cover increased expenses and toll revenue losses."[7]

The factors used to reach this decision were first approved by the supreme court in *Weyauwega Telephone Co. v. Public Serv. Comm.*, 14 Wis.2d 536, 556, 111 N.W. 2d 559, 569 (1961), where it also said:

> The weighing of these various factors is a policy function which lies peculiarly within the province of the PSC. If there exists any reasonable basis in the evidence for the determination made by the commission, a reviewing court should not disturb it.

More recently, in *Winch et al. v. Public Service Commission*, 96 Wis.2d 362, 291 N.W.2d 448 (1980), the supreme court acknowledged the propriety of weighing the three factors of existing telephone service, community of interest and comparative costs when the PSC

---

[6] The PSC conducted a toll usage study for the four exchanges using November, 1975, figures in making its community of interest determination. The conclusion that only a minority of subscribers regularly placed toll calls into the metroplan area is derived from figures which show, for instance, that between 5 and 15 percent of business customers placed over $20 in toll calls to the metroplan area and that between 14.5 and 23.5 percent of residence customers placed over $4 in similar calls. These figures were summarized in Appendix B of the PSC order.

[7] The PSC subtracted the revenue from subscriptions to the metroplan service from the cost of providing the service and found that it would result in annual deficits to the Wisconsin Telephone Company of $242,435 for a low subscription level or $264,980 for a high subscription level. The General Telephone Company would suffer similar deficits of $130,400 or $195,000 respectively.

These figures were summarized in Appendix C of the PSC order.

considers an extended area service request.[8] It upheld the PSC's denial of an extended area service request from residents of Evansville and surrounding rural areas for toll-free service to Madison, Janesville and Stoughton.

The PSC's decision in the instant case reflects a weighing of the proper factors and is supported by "substantial evidence." *Hamilton*, 94 Wis.2d 611. Nothing indicates that the Milwaukee legislators' petition affected the weighing of those factors or in any other way assumed any significance in the decision-making process.

We find no reason to remand this case, as petitioners request, for violation of sec. 227.13(2), Stats. As remand is the only remedy for the claimed procedural error, it would be an empty solution where there is little likelihood of a changed outcome in this case. Agency action will not be upset because of harmless error. *Greater Boston Television Corporation v. F.C.C.*, 444 F.2d 841, 851 (D.C. Cir. 1970) *cert. den.* 403 U.S. 923 (1971).

The petitioners next argue that the PSC's order unjustly discriminates against them by denying their communities metroplan service when others similarly situ-

[8] Appellant Seebach has protested the Wisconsin Telephone Company's letter to this court informing it of the Wisconsin Supreme Court decision in *Winch*, 96 Wis.2d 362. While parties may not submit additional briefs beyond the reply brief, Rule 809.19, this court's practice has been to allow parties to bring relevant cases which are decided after the briefs have been submitted to the court's attention.

This court also receives all Wisconsin Supreme Court decisions as soon as they are issued. This court was thus aware of the decision in *Winch* immediately after it was decided and before the telephone company's letter.

Mr. Seebach sought to distinguish *Winch* from this case in his letter of May 17, 1980. We find that additional argument in this case is unnecessary. For the reasons cited in this opinion, we need not address Mr. Seebach's specific contention that the form of service in *Winch* is distinguishable from the form of service involved in this case.

ated receive it. For instance, the Oconomowoc exchange which receives metroplan service is 29¾ miles from downtown Milwaukee while the West Bend exchange is only 29½ miles from the same point. They claim that they are like the metroplan communities in size and geography, with similar economic and social ties to the Milwaukee metropolitan area, and thus are discriminated against.[9]

In *Winch,* 96 Wis.2d at 371, 291 N.W.2d at 452, the supreme court rejected a similar unjust discrimination claim. It placed the burden of proving this discrimination on the claimants and found that this burden had not been met. It said:

Without additional evidence in the record, the fact that customers of other exchanges have extended-area service does not, standing alone, prove unjust discrimination with regard to Evansville. As the parties claiming unequal protection of the laws, the petitioners bear the burden of proof; the PSC need not demonstrate the absence of a discriminatory effect. *Omernik v. State,* 64 Wis.2d 6, 18, 218 N.W.2d 734 (1974).

Likewise in this case the record is barren of evidence which would allow this court to compare the situations of those granted and those denied metroplan service. Distance from Milwaukee and community size alone do not establish sufficient similarities when the cost of providing the expanded service, demand for it, and other factors such as rates must be explored in an expanded telephone service request proceeding.

The PSC, in denying the instant petitions, distinguished between communities upon the basis of circumstances which existed at the time the metroplan com-

---

[9] Discrimination by telephone companies is forbidden by secs. 196.62 and 196.625, Stats. Section 196.37 allows the PSC to rectify "unjustly discriminatory" rates.

munities received the service and current conditions. It said:

Petitioners have argued that the denial of the service request would result in unjust discrimination because of the availability of the service at other Wisconsin Telephone exchanges that are similarly situated in the Milwaukee metropolitan area. The expansions of this service were granted in the past, based on circumstances relevant at those points in time. As with petitions for EAS expansions, this service request must be considered on its own merits with an analysis of current circumstances. The denial of this petition will not result in unjust discrimination.

For instance, the cost of providing the service was far less when inflation rates were lower and savings were possible by eliminating the need for operator-handled toll calls, the PSC said.[10]

The PSC concluded that existing economic circumstances justified denial of petitioners' request.[11] It found that the cost of providing the requested service would discriminate *against* the majority of subscribers by making them pay the increased flat rates for the benefit of the minority of subscribers who call into the metroplan area.

We cannot find the PSC's decision unreasonable. It was based upon the appropriate facts, with supporting evidence and is the result of a knowledgeable weighing process which "lies peculiarly within the province of the

[10] Since 1972 the PSC has denied petitions for extended area service. In *Telephone Service-Dane County,* 57 PSCW 330 (1972), the commission noted the economic realities in modern utility service and found that reasonably adequate service did not require the expenditures for expanded area service. It found that "toll free" service is a misnomer and that it must ultimately be paid for by some consumer.

[11] *See* n. 6.

PSC." *Weyauwega Telephone,* 14 Wis.2d at 556, 111 N.W.2d at 569.

We also find that the petitioners have not met their burden of proving unjust discrimination. *Winch,* 96 Wis. 2d at 371. The PSC's determination should not be disturbed for alleged inconsistencies.

Seeming inconsistencies do not prove an irrational or discriminatory agency decision.

Consistency, of course, is a virtue both in administrative and in judicial determinations but inconsistencies in determinations arising by comparison are not proof of arbitrariness or capriciousness. We have said that an agency does not act in an arbitrary or capricious manner if it acts on a rational basis. Arbitrary action is the result of an unconsidered, wilful or irrational choice, and not the result of the "sifting and winnowing" process. (Citations omitted.) *Robertson Transport. Co. v. Public Serv. Comm.,* 39 Wis.2d 653, 661, 159 N.W.2d 636, 640 (1968).

The petitioners' next contentions derive from its unjust discrimination claim. They assert that the PSC has deviated from prior practice by treating existing toll revenues as a cost of providing expanded service and not as a measure of value of service; and that this analysis of the economic consequences of the new service is erroneous.

They did not argue in the circuit court that the PSC erred as a matter of law by considering the revenue presently earned from toll calls from the four exchanges into the Milwaukee metroplan area which would be lost by extending local service. We need not consider the petitioners' claims. "It is the often-repeated rule in the State that issues not raised or considered in the trial court will not be considered for the first time on appeal." *Wirth v. Ehly,* 93 Wis.2d 433, 443, 287 N.W.2d 140, 145 (1980); *Terpstra v. Soiltest, Inc.,* 63 Wis.2d 585, 593, 218 N.W.2d 129 (1974).

In *Winch,* 96 Wis.2d 362, the supreme court refused to address the contention that the PSC should not have considered lost toll revenues in evaluating the cost of providing extended area service. As in the present case, this contention was raised for the first time on appeal.

Even were we to reach these claims we would have to reject them. While we could reverse the PSC's decision if it is a deviation from prior agency practice without explanation, sec. 227.20(8), Stats.,[12] we find it to be neither a deviation nor unexplained.

The petitioners have cited no cases to us where lost toll revenues were not considered in the economic analysis. Several PSC decisions have considered this economic analysis, however.[13] *See, e.g. Beloit, Janesville-Telephone Service,* 55 PSCW 661 (1970); *Telephone Service-Dane County,* 57 PSCW 330 (1972); *Cambridge-Madison-Telephone Service,* 58 PSCW 464 (1973); *Mazomanie-Madison Service,* 58 PSCW 557 (1973). We can hardly find a deviation from prior practice.

We furthermore will not dispute the PSC's choice of including lost toll revenues as a "cost" of expanded area service. It is not the function of a reviewing court to dictate the economic analysis to be employed in a decision which is based upon the expertise and lies within the discretion of the PSC. *Weyauwega Telephone Co. v. Public Service Comm.,* 14 Wis.2d 536. We are required

---

[12] *See* n. 3.

[13] This is further bolstered by the five unpublished PSC orders cited by the PSC in its brief which dealt with extended service requests for the Northfield-Alma Center exchange (Docket No. 2180–TV–8, Feb. 28, 1978); the Athens, Edgar and Marathon exchanges (Docket No. 2180–TV–7, Dec. 1, 1977); the Junction City-Stevens Point exchange (Docket No. 1020–TV–3, Aug. 25, 1977); the Pittsville-Wisconsin Rapids exchange (Docket No. 1020–TV–4, Aug. 25, 1977); and the Darien exchange (Docket No. 2180–TV–3, April 14, 1977).

to recognize the PSC's "experience, technical competence and specialized knowledge" in the area of telephone regulation. Sec. 227.20 (1), Stats. This must be accorded due weight upon judicial review. *St. Francis v. Public Service Comm.*, 270 Wis. 91, 98, 70 N.W.2d 221 (1955). We recognize the PSC's special expertise in extended area service proceedings. *See, i.e., Cambridge-Madison-Telephone Service*, 58 PSCW 464 (1973); *Telephone Service-Dane County*, 57 PSCW 330 (1972). Accordingly, we agree with the trial court that there has been no abuse of discretion in this case.

The petitioners' final contention is that they were denied due process by the five-year delay between filing of the first petitions and the issuance of the order of denial on February 28, 1978. The first petition was filed on November 6, 1972, and the second on November 1, 1974, and subsequent prehearing conferences and hearings were held in 1975 and 1976. They contend that they were prejudiced because economic conditions worsened over this period, thus facilitating a decision against them on economic grounds. They also did not argue this prejudice to the trial court. We again need not consider this for the first time on appeal. *Wirth*, 93 Wis.2d 433; *Terpstra*, 63 Wis.2d 585.

Nonetheless this court has held that "[a]bsent a mandatory requirement, administrative delay in issuing a decision is not reversible error" on due process grounds. *Chicago & N. W. R.R. v. Labor & Ind. Rev. Comm.*, 91 Wis.2d 462, 480, 283 N.W.2d 603, 612 (1979) (citing *Neu's Supply Line v. Department of Revenue*, 52 Wis.2d 386, 395, 190 N.W.2d 213, 218 (1971)).

We accordingly find no denial of due process in this case. Administrative delays are unfortunate but nothing in this case indicates that lack of fair play which would

violate our concept of due process. *Mid-Plains Telephone v. Public Serv. Comm.*, 56 Wis.2d 780, 787, 202 N.W.2d 907 (1973) ; *State ex. rel. Madison Airport Co. v. Wrabetz*, 231 Wis. 147, 153, 285 N.W. 504 (1939).

*By the Court.*—Judgment affirmed.