DANE COUNTY HOSPITAL & HOME, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Don C. Holy,
Defendants-Respondents.

Court of Appeals

No. 84–983. *Submitted on briefs May 3, 1985.—
Decided June 20, 1985.*
(Also reported in 371 N.W.2d 815.)

For the plaintiff-appellant the cause was submitted on the briefs of *Glenn L. Henry,* corporation counsel, and *Judith H. Toole,* assistant corporation counsel, of Madison.

For the defendant-respondent Labor and Industry Review Commission the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

For the defendant-respondent Don C. Holy the cause was submitted on the brief of *Robert A. Kay* of Madison.

Before Gartzke, P.J., Dykman, J., and Bruce F. Beilfuss, Reserve Judge.

BEILFUSS, Reserve Judge.   Dane County Hospital & Home (the employer) appeals from a judgment that affirmed the Labor and Industry Review Commission's (LIRC) award of worker's compensation to the respondent Don Holy (the employee).  The challenged award arises from an injury which occurred in March, 1981, and includes payment for certain medical expenses, twenty weeks of permanent partial disability benefits, thirty-eight weeks of temporary total disability benefits during rehabilitation training, and travel expenses for the training period.  The award also stated that the employee "shall be eligible" for additional temporary total disability and travel compensation for subsequent training,

subject to continued attendance and progress and periodic review by the Department of Industry, Labor & Human Relations (DILHR).

The employer contends that various errors in the hearing before DILHR denied the employer due process. The employer also contends that the award was not authorized by secs. 102.43(5) and 102.61, Stats., 1981–82[1] because the degree of the employee's injury was not substantial so as to establish eligibility for vocational rehabilitation training, because DILHR did not follow its own regulations in its decision, and because sec. 102.61 references a federal rehabilitation act that has been repealed. We reject the employer's contentions and affirm.

Under sec. 102.61, Stats., an employee eligible for and receiving worker's compensation pursuant to ch. 102 and vocational rehabilitation training pursuant to the federal vocational rehabilitation act, as administered by the state, shall be compensated for travel and maintenance:

An employee who is entitled to receive and has received compensation pursuant to this chapter, and who is entitled to and is receiving instructions pursuant to the provisions of the act of congress known as the vocational rehabilitation act, and amendments thereto (Public Law 113—78th Congress) as administered by the state in which he holds residence or in which he resided at the time of becoming physically handicapped, shall, in addition to his other indemnity, be paid his actual and necessary expenses of travel and, if he receives such instruc-

---

[1] Statutory references are to 1981–82, Stats., unless otherwise indicated.

The employer characterizes several rulings by DILHR, separately and in aggregate, as denials of due process. The employer's contentions generally concern matters of statutory construction or exercises of discretion that will be so addressed because they do not rise to the level of due process violations. Claiming constitutional magnitude for rulings of apparent statutory or discretionary dimension does not elevate the rulings to constitutional status. *See State v. Schlise,* 86 Wis. 2d 26, 29, 271 N.W.2d 619, 620 (1978) ("To simply label an alleged procedural error as a constitutional want of due process does not make it so").

tions elsewhere than at the place of his residence, his actual and necessary costs of maintenance, during rehabilitation, . . .

An employee receiving instructions as outlined in sec. 102.61 is also entitled to up to forty weeks of indemnity for temporary disability during training and indemnity during training in excess of forty weeks as found warranted by DILHR:

Temporary disability, during which compensation shall be payable for loss of earnings, shall include such period as may be reasonably required for training in the use of artificial members and appliances, and shall include such period as the employe may be receiving instruction pursuant to s. 102.61. Temporary disability on account of receiving instruction of the latter nature, and not otherwise resulting from the injury, shall not be in excess of 40 weeks. Such 40-week limitation does not apply to temporary disability or travel or maintenance expense under s. 102.61 if the department determines that additional training is warranted. The necessity for additional training as authorized by the department for any employe shall be subject to periodic review and reevaluation.

Sec. 102.43 (5).

The employee was injured in March, 1981. In December he was awarded temporary total disability benefits by interlocutory order. His injury consisted of mechanical low back pain with acute exacerbation. His permanent impairment included back pain, decreased endurance, and a recurrence of symptoms when lifting or bending.

The employee contacted the Division of Vocational Rehabilitation in the Department of Health and Social Services (DHSS) and in July, 1981, was certified for retraining in respiratory therapy at Madison Area Technical College (MATC). His instruction began in late August, although he had taken preliminary courses earlier.

The employee applied in January, 1982, for temporary total disability, permanent partial disability and medical expenses compensation. In March, Dr. Harvey Barash filed a report finding the employee permanently partially disabled to the extent of two percent of the body as a whole. Dr. Barash had been chosen by the employer in April, 1981, to examine the employee. Barash continued to treat the employee after that time. The employer alleges that Barash has become the employee's physician. The employee was subsequently examined by Dr. Richard Harvey who was also chosen by the employer. These doctors' records were admitted at a June, 1982, hearing.

Prior to the hearing, the employer requested another medical examination in April of 1982. The employee refused the request, alleging that the employer's doctor already examined him. DILHR denied the employer's requests for suspension of the proceedings and for a continuance. The hearing was held June 23, 1982, and the award dated July 20, 1982. LIRC modified and affirmed the award by order dated January 20, 1983, and the circuit court affirmed.

## DENIAL OF MOTION FOR SUSPENDED PROCEEDINGS

DILHR gave no reasons for denying the motions for a continuance and suspension of the proceedings. We agree with the employer that reasons should be given for the benefit of the parties and to make a record for review. In this instance DILHR's failure to state its reasoning is not reversible error. Discretionary decisions are not reversed when supported by an independent review of facts of record. *Conrad v. Conrad,* 92 Wis. 2d 407, 415, 284 N.W.2d 674, 678 (1979).

The employer contends that because the employee refused to submit to its requested examination, it was en-

titled to a suspension of proceedings under sec. 102.13 (1), Stats., which provides in relevant part:

[W]henever compensation is claimed by an employe, the employe shall, upon the written request of the employe's employer, submit to reasonable examination by a physician . . . . So long as the employe, after such written request of the employer, refuses to submit to such examination, or in any way obstructs the examination, the employe's right to begin or maintain any proceeding for the collection of compensation shall be suspended, . . .

At least two doctors examined the employee. The employee was examined by an orthopedic surgeon, Dr. Harvey Barash, who had been treating the employee. Dr. Barash was initially chosen by an administrator for the employer in April, 1981. He later diagnosed a two percent functional disability. His diagnosis was filed with DILHR on March 11, 1982. It is undisputed that Dr. Richard Harvey examined the employee on September 23, 1981, and viewed the employee's x-rays on November 13, 1981, on behalf and at the expense of the employer. Dr. Harvey's diagnosis was inconclusive, and he recommended consultation with an orthopedic surgeon. The employee subsequently saw Barash.

The employer asserts that Dr. Barash was not its doctor, but instead was the employee's treating physician because bills were sent to the employee, although the employee did not pay them, and because the record allegedly does not show that Barash was provided and paid for by the employer.

We need not address whether Dr. Barash was the employer's doctor because Dr. Harvey was indisputably the employer's paid examining physician that the employer was entitled to under sec. 102.13(1), Stats.

The employer also contends that both doctors examined the employee at an early stage before permanent disability and vocational rehabilitation benefits were

claimed or at issue, and that it was therefore entitled under sec. 102.13(1), Stats., to a new examination because "[a] physician will be looking toward different factors in determining the degree and cause of permanent disability than he would in determining whether or not an employee was temporarily unable to perform his job duties as a result of an injury."

The employer correctly states that Dr. Harvey's examination of the employee and his x-rays happened just before the employee applied for the compensation that is the subject of this appeal. However, the compensation application which followed Harvey's examination presented neither new issues nor a different perspective on his examination. Harvey's examination occurred after the employee's first application for compensation that resulted in a hearing and interlocutory order that addressed generally the nature and extent of disability, discussed permanent partial disability and concluded that it was not calculable at the time because DILHR could not determine whether the healing period had ended. DILHR found that the healing period extended at least until July 16, 1981. It ultimately found July 16 to be the end of the healing period. Dr. Harvey's examination of the employee occurred over two months after this date.

Thus permanent disability was at issue from the onset and was capable of definition after July 16. Dr. Harvey's examination occurred two months after this date. His report does not indicate that he confined his examination to factors particular to permanent partial or temporary total disability. He examined the employee with regard to the general nature and extent of the disability. The employer complains that Dr. Harvey's diagnosis was inconclusive, but sec. 102.13(1), Stats., does not guarantee a *conclusive* diagnosis.

Dr. Harvey conducted the examination permitted the employer by sec. 102.13 (1), Stats. The motion for suspension of proceedings was properly denied.

## DENIAL OF CONTINUANCE

The employer contends that DILHR abused its discretion by denying the employer a continuance for purposes of cross-examining Dr. Barash. The employer waited until two days before the hearing to attempt service of a subpoena on Barash. The employer then discovered that Barash was unavailable for the hearing.

The denial of a continuance was within the discretion of DILHR. *Nelson Mill & Agri-Center, Inc. v. ILHR Dept.*, 67 Wis. 2d 90, 94–95, 226 N.W.2d 435, 438–39 (1975). We are unable to conclude that discretion was abused. Dr. Barash filed his estimate of two percent disability more than three months before the hearing. The employer knew well before that time that Dr. Barash was treating the employee. Nothing prevented the employer from contacting Dr. Barash. Section 102.17 (1) (f), Stats., permitted the employer to obtain the doctor's testimony by other means in light of his presence out of Wisconsin.

In *Woodside School Dist. v. Industrial Comm.*, 241 Wis. 469, 475–76, 6 N.W.2d 182, 185 (1942), the court rejected an employer's assertion that it was denied a fair hearing where necessary evidence was not presented because of the employer's failure of preparation. Another hearing was found unwarranted in *Woodside,* in part because "[t]he right of claimants to compensation should be decided as expeditiously as possible." *Id.* at 476, 6 N.W.2d at 185. Similarly, DILHR did not abuse its discretion in denying a continuance because the need for a

continuance arose from the employer's lack of preparation, and the employee's right to compensation should have been decided expeditiously.

## EX PARTE COMMUNICATION

The employer contends that the employee's counsel's letter to DILHR dated June 14, 1982, a copy of which was not given to the employer, was the basis for the decision not to grant a continuance. Because that letter was an *ex parte* communication, the employer argues it was denied an opportunity to rebut the letter's allegations and therefore was denied due process. The employee should have sent a copy to the employer in the interest of fairness. The failure to do so, however, is not a per se due process violation.

DILHR is presumed impartial and insulated from the improper influence of an *ex parte* communication. In *General A.F. & L. Assur. Corp. v. Industrial Comm.*, 223 Wis. 635, 652–53, 271 N.W. 385, 392 (1937), the court stated in regard to the Industrial Commission's receipt of an *ex parte* communication in a worker's compensation case that: "The commission constitutes a body of expert triers of fact—not a lay tribunal. It is supposed that it will not be swayed by *ex parte* communications, and that it will be able to protect itself against importunities and requests that might bias a juror." The employee must show to overcome this supposition that the error was probably prejudicial to a material degree in order to prove a violation of due process. *See State ex rel. De Luca v. Common Council*, 72 Wis. 2d 672, 695, 242 N.W. 2d 689, 701 (1976) (probable prejudice necessary for proof of due process violation where evidence in decision maker's possession withheld from employee). *Cf. Seebach v. Public Service Commission*, 97 Wis. 2d 712, 721,

295 N.W.2d 753, 759 (Ct. App. 1980) (improper *ex parte* communication under sec. 227.13, Stats., not reversible error unless prejudicial to a material degree).[2]

The record discloses no probability of prejudice to the employer. The letter at issue is a summary of facts that were more fully developed in previous letters copies of which were given to the employer. The only "fact" not previously mentioned in those letters is a misstatement of the date of the employee's last examination by Dr. Barash as December 21, 1981, when material then on file with DILHR showed the last examination to be February 1, 1982. This misstatement is relatively insignificant under the circumstances. It could have only worked to the employee's detriment in that the more recent the examination, the lesser the need for another examination and, therefore, under sec. 102.13(1), Stats., a suspension of proceedings.

The employer was not prejudiced because the letter at issue added no facts or argument detrimental to the employer not already in the record. The employer's right to due process was not denied.[3]

---

[2] *Seebach* is of persuasive value but not controlling because it applies and interprets the *ex parte* prohibitions contained in sec. 227.13, Stats., that are not applicable to this proceeding. *See* sec. 227.22 ("Only the provisions of ss. 227.01 to 227.21 relative to rules are applicable to matters arising out of . . . ch. 102, . . .").

[3] The employer asserts that the timing of events shows that the *ex parte* communication influenced the denial of its motion for suspension. DILHR's June 8, 1982, letter to the parties asserts that a decision on suspension of the proceedings could not be made because the record was incomplete and asked for information regarding the date of the last independent examination and the nature of the expected claim. The *ex parte* communication was in response to this letter and a decision on suspension came shortly after the *ex parte* communication.

The *ex parte* communication was merely a reiteration of facts of record. DILHR may have reviewed the record, or changed its

## REVIEW OF VOCATIONAL REHABILITATION ELIGIBILITY

The employer contends it was denied due process because DILHR, LIRC, and the circuit court did not reconsider *de novo* the employee's eligibility for vocational rehabilitation services. DHSS determined that the employee was eligible for vocational rehabilitation services and provided them pursuant to sec. 47.40, Stats. This determination was made without the participation of the employer.

When an employee is entitled to and receives worker's compensation, and in addition is entitled to and receives vocational rehabilitation services from DHSS, the employer must pay the employee's travel expenses and maintenance costs if the services are provided away from the employee's residence. Sec. 102.61, Stats. In awarding travel and maintenance costs, DILHR must defer to DHSS's determination of eligibility for vocational rehabilitation services. The supreme court stated in *Massachusetts Bonding & Ins. Co. v. Industrial Comm.*, 275 Wis. 505, 512, 82 N.W.2d 191, 194–95 (1957):

[I]t does not seem that the legislature intended to give the Industrial Commission any power to interpret the rehabilitation laws. We conclude that any power of review given to the Industrial Commission is limited. Unless it is shown before the commission that highly material facts were misrepresented to or withheld from the

mind about the record's completeness without review, or read the *ex parte* communication and nothing else or done nothing at all. The employer requests that we infer prejudicial effect under these speculative circumstances. The facts do not compel the inference, and the burden of showing prejudice has not been met. In any event, the employer was not denied an opportunity to be heard on the facts and issues mentioned in the *ex parte* communication because the facts and issues were all of record before the communication, and DILHR requested information on them from the employer in DILHR's letter of June 8.

state board or that the state board has applied an interpretation of the rehabilitation laws which is entirely outside the reasonable scope of interpretation and hence a clear abuse of administrative power, the Industrial Commission must find that any applicant who is receiving aid from the state board is also entitled to it.

One in appellants' position does not have the right to a hearing before the state board, but has had a hearing before the Industrial Commission on the occurrence of the injury and other facts making him liable for payment of compensation. He must accept the further liability for travel and maintenance in connection with a rehabilitation program on which the state board is willing to spend public funds unless he can demonstrate at the hearing before the Industrial Commission that there has been fraud or the type of abuse of power above referred to.

The employer argues that because it did not participate in the decision at DHSS and received no independent review of vocational rehabilitation services eligibility, it was denied the due process right to be heard upon the applicable law and evidence.

The employer's due process argument was implicitly rejected by the majority in *Massachusetts Bonding*. The majority did not join the separate opinion of Justice Steinle, which stated that lack of notice and hearing to the employer on the issue of the employee's eligibility for services presented due process problems.[4] Further,

---

[4] Justice Steinle, writing separately in *Massachusetts Bonding*, stated:

To require an employer or his insurer to pay an employee's expenses of travel and costs of maintenance on account of vocational training, without affording notice and a hearing to such employer to challenge the alleged handicapped status of the employee and the reasonable need for such training, and his entitlement thereto, would, in my opinion, present a serious question of deprivation of property of such employer or insurer without due process of law in violation of sec. 1, art. XIV of the United States constitution. We should not adopt a construction of sec. 102.61,

the employer was not denied the right to be heard. Under *Massachusetts Bonding,* DHSS's determination may be reversed when highly material facts were misrepresented or when DHSS unreasonably and clearly misinterpreted the rehabilitation law. Eligibility for vocational rehabilitation is also just the first step toward employer liability for travel and maintenance costs. The employer may challenge the employee's entitlement to worker's compensation, the necessity for and actual amount of travel expenses,[5] the necessity for and amount of maintenance costs, and the three other conditions placed on the employee's entitlement to maintenance and travel indemnity from the employer by sec. 102.61, Stats., which provides:

(1) [The employee] must undertake the course of instruction within 60 days from the date when he has sufficiently recovered from his injury to permit of his so doing, or as soon thereafter as the officer or agency

Stats., which gives rise to serious doubt of its constitutionality where, as is the case here, a different construction which will avoid such doubt, is permissible under the terms of the statute.

275 Wis. at 515, 82 N.W.2d at 196 (Steinle, J., concurring, joined by Broadfoot, Wingert, JJ.). Justice Steinle's comments are appealing, but we are bound by the majority opinion of the supreme court.

[5] DILHR's award of $845.63 in travel expenses to the employee is supported by credible evidence, offered by the employee and not disputed by the employer. We therefore affirm this finding. *See Klein Industrial Salvage v. ILHR Dept.,* 80 Wis. 2d 457, 461, 259 N.W.2d 124, 125 (1977) (agency finding of fact upheld if supported by credible evidence).

The award's premise is not explicit. The hearing examiner's affirmed award granted $22.55 weekly for school travel expenses incurred by the employee upon enrollment shortly after being found eligible up to the date of the hearing, a period of approximately thirty-seven and one-half weeks. This award apparently encompassed the $10.50 weekly parking expenses claimed by the employee, and approximately eleven cents per mile. The employer does not challenge computation of the award.

having charge of his instruction shall provide opportunity for his rehabilitation.

(2) He must continue in rehabilitation training with such reasonable regularity as his health and situation will permit.

(3) He or she may not have expenses of travel and costs of maintenance on account of training for a period in excess of 40 weeks in all, except as provided in s. 102.43 (5).

■

Contrary to the employer's contentions, it was not denied a meaningful opportunity to be heard. The employer disputed and briefed the issue of vocational rehabilitation eligibility throughout the proceedings and failed to meet its burden to show a misrepresentation of a highly material fact or an entirely unreasonable interpretation of the law. *Massachusetts Bonding,* 275 Wis. at 512, 82 N.W.2d at 194–95.

The employer argues that the employee's two percent functional disability is insufficient to meet the federal act's definition of handicapped individual: "[T]he term 'handicapped individual' means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a *substantial* handicap to employment and (ii) can reasonable be expected to benefit in terms of employability from vocational rehabilitation services . . ." 29 U.S.C. § 706 (7) (A) 1982 (emphasis added). The employer also contends that the vocational rehabilitation counselor who found the employee eligible for rehabilitation instruction abused his discretion by not considering medical evidence of disability and whether instruction was necessary to render the employee employable.

■

Under the interpretation of sec. 102.61, Stats., in *Massachusetts Bonding,* the counselor's determination of eligibility is reversible only for misrepresentation of

highly material facts or if based on an entirely unreasonable interpretation of the rehabilitation laws. Although the record evidence is sketchy, we are unable to conclude the determination was reversible error.

The counselor testified before DILHR's hearing examiner that he reviewed numerous medical records of the employee from several clinics and Dr. Barash. The records in part documented the employee's continuing physical discomfort and back disorder, which kept him from working, and a lifting limitation of twenty pounds, one-third the capacity necessary for his former job. The record does not show that the healing period had ceased. The counselor also interviewed the employee and gathered biographical and employment history data. The counselor ascertained the employee's interest in respiratory therapy, briefly reviewed the field and job market with attention to lifting requirements, and reviewed the curriculum at MATC. The counselor concluded that the employee was handicapped and eligible for rehabilitation services and that they would benefit him, as required by 29 U.S.C. sec. 706(7)(A).

While the counselor's research and work was far from thorough, no misrepresentation of facts was shown, and his interpretation of the rehabilitation law was not entirely unreasonable.

The employer also contends that vocational rehabilitation benefits are not authorized because the federal Vocational Rehabilitation Act, P.L. 113–78, referenced in sec. 102.61, Stats., no longer exists. It was repealed and the law rewritten in the Rehabilitation Act of 1973, P.L. 93–112. The employer also contends that the reference in sec. 102.61 is an unconstitutional delegation of legislative authority to the federal congress.

Section 102.61, Stats., incorporates by reference generally "the act of congress known as the vocational rehabilitation act, and amendments thereto (Public Law

113—78th Congress) as administered by the state." Section 102.61 specifically incorporates amendments to the act, and because it incorporates general federal vocational rehabilitation law, it necessarily references the current federal law. The court noted this general proposition in *Union Cemetery v. Milwaukee*, 13 Wis. 2d 64, 68, 108 N.W.2d 180, 182 (1961), as follows: "[W]hen a statute incorporates the general law on a particular subject, the reference is construed to mean that such statute as it exists at the time of incorporation and at any given time thereafter is incorporated. Thus a general reference adopts prospectively the future alterations and even the repeal of the incorporated law." The alteration of the Federal Vocational Rehabilitation Act was therefore made a part of sec: 102.61.

In incorporating this federal rehabilitation law, the Wisconsin legislature has not delegated its legislative authority. It has no authority to amend the federal rehabilitation law that could be delegated. Section 102.61, Stats., is dependent in part on the happening of a contingency: eligibility for, and receipt of, rehabilitation services under the federal law, as administered by the state. This is not an unconstitutional delegation. *See State v. Wakeen*, 263 Wis. 401, 407, 57 N.W.2d 364, 367 (1953) ("legislature may enact a statute, the operation of which is dependent on the happening of a contingency fixed therein").

Finally, the employer contends that DILHR's award of rehabilitation "benefits" fails to meet DILHR's "criteria for eligibility for vocational rehabilitation benefits" contained in Wis. Adm. Code, sec. Ind 80.49(3). The employer misconstrues this section and its applicability under these circumstances.

Wisconsin Adm. Code sec. Ind 80.49(3) does not set eligibility criteria, but instead merely states rebuttable

presumptions for DILHR's determination of the necessity for rehabilitation training:

(3) The determination of whether an industrial injury creates a necessity for vocational rehabilitation training is the responsibility of the worker's compensation division of the department. The division shall utilize the following presumptions:

(a) If an injury causes permanent disability entitling an employe to compensation for permanent disability of 100 or more weeks, it shall be presumed that the injury necessitates vocational rehabilitation training unless a showing is made to the contrary.

(b) If an injury causes no permanent disability or a permanent disability entitling an employe to less than 100 weeks of compensation for permanent disability, it shall be presumed that the injury did not necessitate vocational rehabilitation training unless a showing is made to the contrary.

The immediately preceding subsection concedes that eligibility is determined by DHSS, consistent with *Massachusetts Bonding* and sec. 47.40, Stats.: "The determination of eligibility for vocational rehabilitation training and whether a person is a suitable subject for training is the responsibility of the vocational rehabilitation division of the department of health and social services." Sec. Ind. 80.49 (2). Section Ind. 80.49 (3) may not conflict with DHSS's duty under sec. 47.40, Stats., or with sec. 102.61, Stats., as interpreted by *Massachusetts Bonding*. *See State ex rel. Irany v. Milw. County C.S. Comm.*, 18 Wis. 2d 132, 136, 118 N.W.2d 137, 139 (1962) (administrative rule inconsistent with statute is invalid).

How DILHR's determination of "necessity" under Wis. Adm. Code sec. Ind. 80.49 (3) relates to DHSS's determination of eligibility for training pursuant to sec. 47.40, Stats., is not clear. The presumptions contained in sec. Ind. 80.49 (3) may be in reference to DILHR's authority to determine the length of temporary disability that is premised solely on account of rehabilitation training in

excess of forty weeks. Section 102.43, Stats., provides in relevant part:

[W]eekly indemnity shall be as follows:

. . . .

(5) . . . Temporary disability on account of receiving [vocational] instruction . . . and not otherwise resulting from the injury, shall not be in excess of 40 weeks. Such 40-week limitation does not apply to temporary disability or travel or maintenance expense under s. 102.61 if the department determines that additional training is warranted. The necessity for additional training as authorized by the department for any employe shall be subject to periodic review and reevaluation.

The presumptions in sec. Ind. 80.49(3) are rebuttable. Application of the section might require the presentation of additional evidence by the employee in this case. LIRC's determination was based upon the record compiled before DILHR, sec. 102.18(3)(d), Stats., before the effective date of sec. Ind. 80.49(3). It appears from the record that no evidence was taken in this case after October 1, 1982. Under these circumstances, application of sec. Ind. 80.49(3) would be improper.

*By the Court.*—Judgment affirmed.