Donald J. Parker and Linda C. Parker, Plaintiffs-Respondents,
v.
Rod Buck, Defendant-Appellant.
No. 04-1547.
Court of Appeals of Wisconsin.
Opinion Filed: February 17, 2005.
¶1 HIGGINBOTHAM, J.[1]
Rodney Buck appeals a judgment entered against him in favor of Donald J. Parker and Linda C. Parker after a small claims court trial. Buck argues the trial court deprived him of a fair and impartial trial because it accepted extrajudicial information without providing him notice or an opportunity to respond. We disagree. He also argues his right to a fair trial was violated because the trial court denied him the opportunity to present a defense. We agree and therefore reverse and remand for a new trial.

FACTS
¶2 The Parkers purchased a vehicle from Buck, d/b/a George Street Sales, in October 2002. At the time of purchase, a Wisconsin Buyer's Guide, placed on the window of the vehicle, indicated nearly all items in the "General Condition" column and the "Equipment Requirements" column were in good working condition. While the purchase price of the car was $2900, the Parkers indicated that at the time of purchase, they were instructed to write a $1900 check to George Street Sales and another $1000 check to Buck's handyman business.
¶3 In April 2003, the Parkers brought a small claims action against Buck for $5000; the Parkers claimed that from the time the car was driven off the lot, they experienced extensive radiator and transmission problems, as well as other problems; the Parkers also indicated the frame of the vehicle was bent from a previous accident, a fact not disclosed to them prior to purchase. The Parkers' claim was for $5000, which included the purchase price and all repairs and towing bills associated with the vehicle.
¶4 At the originally scheduled trial date, on June 17, 2003, the trial court was concerned with the $1,900 purchase price stated in the contract but the $2900 actually paid by the Parkers ($1900 check to George Street Sales and $1000 to Buck's handyman business.) The trial court determined a law enforcement investigation into potential fraud should occur before the small claims action proceeded.
¶5 A status hearing was held on July 22, 2003. The trial court elected to stay the small claims matter pending the district attorney's investigation of possible fraud by Buck. The trial court indicated that if the authorities indicated there was no criminal case, the parties would return to try the issue as a small claims matter.
¶6 On April 27, 2004, a small claims trial was held. The trial court explained at the beginning of the trial that although the district attorney believed a criminal violation had occurred, the district attorney was satisfied "the remedy available in small claims would be sufficient to address the issue" and thus no criminal charges would be brought. The Parkers testified their $5000 claim for damages was based upon the purchase price of the car, cost of repairs and towing bills. The Parkers indicated Buck told them to write the two separate checks to save a little money on taxes.
¶7 When asked what was wrong with the car that was represented as being in good working condition on the Wisconsin Buyer's Guide checklist, Don Parker stated
Just about everything on the checklist.
....
I put new shocks on the car. I bought two new rims for the car.
I've taken it into Don's Towing and Repair and had them check it out.... And at that point in time after I took it to Don's Towing and Repair he took it over to Murphy's Frame and Axle and that's when I found out the frame was bent on the car. I didn't get that fixed because I didn't want to stick another $800 into the car.
I had the transmission worked on. I had new trany pan put in it, ball joints. I've stuck more into the car than what I paid for the car.
Don Parker indicated the car still did not work. The Parkers also indicated an MV-11 form was not submitted to the Department of Motor Vehicles until January 3, 2003, when he signed a new form because Buck had lost the original form.
¶8 Buck argued that the Parkers made no complaints about the car from October 2002 (the time of purchase) until January 2003; however, the Parkers explained they spoke with Buck's assistant, Billy Lee, about their complaints with the car nearly every day. In addition, Don Parker indicated he discussed the car's numerous problems "quite extensively" with Buck at the time he signed the new MV-11 form.
¶9 Buck testified his wife had driven the car before it was sold to the Parkers and she had no problems with the car; however, Buck's wife was not present at trial to confirm his testimony. Buck further testified, to explain the issuance of the two checks, that his corporation owned both George Street Sales and the handyman business; thus both checks went into the same bank account and all sales taxes were paid on the $2,900 purchase price.
¶10 When asked to explain the alleged misrepresentation on the Wisconsin Buyer's Guide, Buck replied that if there really had been immediate and constant problems with the car, the Parkers would not have signed the MV-11 form two and one-half months after they purchased the car. Buck also repeated his wife would not have driven the car if any of the Parkers' alleged repairs were necessary.
¶11 Buck submitted to the court receipts for repairs made to the car prior to the Parkers' purchase. The trial court indicated that the receipts were insufficient because they were dated six to eight months prior to the purchase of the car. The trial court asked Buck if he had any receipts dated thirty to sixty days before he sold the vehicle; Buck stated he did not have any receipts for repairs performed within that time period and presented the receipts he had. Upon receiving the receipts, the trial court observed that the Vehicle Identification Numbers (VINs) on some of the receipts did not match the VIN of the car; at that point, the trial court instructed Buck to step down from the witness stand and entered judgment in favor of the Parkers. Buck appeals.

DISCUSSION
¶12 Buck first argues the trial court deprived him of a fair and impartial trial because it accepted extrajudicial information without providing him notice or an opportunity to respond. We disagree.
¶13 The "extrajudicial information" to which Buck apparently objects is based upon the following statement from the trial court:
"Mr. Gruenke in the District Attorney's office has reviewed the materials and although he believes that there was a violation, that he is satisfied that the remedy available in small claims would be sufficient to address the issue and will not be proceeding with any criminal charges."
Buck argues that "the trial judge did not inform ... Buck what ex parte information she might have been told or what ex parte information she might have been given in writing that may have had an impact upon the sum and substance of the issues in the trial." Citing Supreme Court Rule 60.04 (2004)[2] in support of his arguments, Buck also contends he was not told of the existence of certain items in the record and thus he had no opportunity to respond to them. These arguments are unpersuasive.
¶14 First of all, when the trial court made the aforementioned statement indicating it had spoken with the district attorney's office, Buck did not object. Failure to object to an error at trial generally precludes raising the issue on appeal. State v. Davis, 199 Wis. 2d 513, 517, 545 N.W.2d 244 (Ct. App. 1996). In addition, as the party alleging the occurrence of an ex parte communication, Buck must demonstrate he was prejudiced to a material degree by the alleged ex parte communication. See Seebach v. PSC, 97 Wis. 2d 712, 721, 295 N.W.2d 753 (Ct. App. 1980). "[M]aterial error occurs when a party not notified of an ex parte communication is prejudiced by the inability to rebut facts presented in the communication and where improper influence upon the decision-making appears with reasonable certainty." Id.
¶15 Assuming without deciding that an ex parte communication did, in fact, occur, Buck has failed to prove this communication caused him prejudice to a material degree.[3] Buck merely points out that, based upon the trial court's statement, he believes an ex parte communication occurred and thus he was not accorded a fair and impartial trial. Buck makes no connection between the alleged communication and any influence it may have had on the trial court in deciding the case. Buck simply concludes he was deprived of the right to be heard because of the alleged ex parte communication. This argument is without merit.
¶16 Buck also argues that the trial court failed to permit him to present a defense. We agree.
¶17 Buck claims he was in the process of testifying and presenting evidence in his own defense when the trial court "suddenly branded him as a `liar' and entered judgment against him." He claims he was not permitted to explain why the VIN on the two receipts differed from the VIN on the car purchased by the Parkers; that he was not permitted to submit his sales tax receipts into evidence; that he was not permitted to offer his deposit and income tax records into evidence; that he was not permitted to offer his business records into evidence; and that he was not allowed to call his witness, Lee, his George Street Sales assistant, to rebut Donald Parker's claim he spoke with Lee almost every day regarding problems with the car.
¶18 We review a trial court's ruling as to the admissibility of evidence under the erroneous exercise of discretion standard. Martindale v. Ripp, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. In making evidentiary rulings, the circuit court has broad discretion. Id. We will uphold a discretionary decision to admit or exclude evidence if the trial court examined the relevant facts, applied a proper legal standard and, using a demonstrated rational process, reached a reasonable conclusion. Id.
¶19 In the middle of Buck's testimony, the trial court cut him off, branding Buck a "liar," and prohibited him from presenting any further evidence because of the inconsistencies between the VINs on the receipts and the VIN on the car in question. Despite his attempts to do so, Buck was never given an opportunity to explain these inconsistencies, never given an opportunity to call Lee as a witness to refute the Parker's claims and never allowed to complete his own testimony and the presentation of his defense.
¶20 We recognize a trial court has the authority under WIS. STAT. § 906.11 to control the mode and order of interrogating witnesses and the presentation of evidence. However, we conclude the trial court erroneously exercised its discretion by preventing Buck from completing the presentation of his defense.
¶21 The right to be heard is a fundamental right of due process. State ex rel. Sahagian v. Young, 141 Wis. 2d 495, 500, 415 N.W.2d 568 (Ct. App. 1987). Buck was not allowed to explain the differences between the VINs on the receipts and the VIN on the Parker's car. He contends that had the court permitted him to continue his testimony on this topic, he would have explained that the VIN on the parts used to repair the Parker's vehicle would naturally be different because the parts came from a different vehicle.[4] Buck also contends Lee would have testified the Parkers made no complaints to Lee about the car within the first two and onehalf months of owning the car. We conclude this evidence, had Buck been afforded the opportunity to present it, could have contradicted the Parkers' evidence and affected the outcome of the trial. Furthermore, Buck was essentially barred from making any objection to the court regarding its directives, rulings and judgment. Indeed, it is clear by reading the trial transcript that Buck faced the possibility of being held in contempt for raising any timely objections. We conclude Buck was denied his right to a fair trial. We therefore reverse the judgment of the trial court and remand for a new trial.[5]
By the Court.  Judgment reversed and cause remanded with directions.
NOTES
[1] This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(a). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] The portion of SCR 60.04 to which Buck cites is as follows:

The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law.
(1) In the performance of the duties under this section, the following apply to adjudicative responsibilities:
....
(g) A judge shall accord to every person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to law. A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding except that:
1. A judge may initiate, permit, engage in or consider ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits if all of the following conditions are met:
a. The judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.
b. When the ex parte communication may affect the substance of the action or proceeding, the judge promptly notifies all of the other parties of the substance of the ex parte communication and allows each party an opportunity to respond.
[3] In his blue brief, Buck fails to argue or show that the alleged ex parte communication prejudiced him. It is only in his reply brief that Buck attempts to argue that the communication affected the court's view of his credibility. We do not consider arguments first raised in the reply brief. Schaeffer v. State Pers. Comm'n, 150 Wis. 2d 132, 144, 441 N.W.2d 292 (Ct. App. 1989).
[4] Assuming without deciding that the trial court was correct in its assessment that Buck was a liar, that conclusion serves as no basis to prevent Buck from presenting his defense. Rather, matters of credibility are more properly considered at the factual finding stage of a trial.
[5] Buck also argues the trial court erroneously entered judgment against him based upon its mistaken belief that he lied and falsified documents. However, because we find in Buck's favor on another issue, we decline to address this argument. See Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663 (1938).