John Kᴙᴜᴄᴢᴇᴋ and Kruczek Construction, Inc.,
Petitioners-Appellants-Cross-Respondents,†

v.

Wɪsᴄᴏɴsɪɴ Dᴇᴘᴀʀᴛᴍᴇɴᴛ ᴏꜰ Wᴏʀᴋꜰᴏʀᴄᴇ Dᴇᴠᴇʟᴏᴘᴍᴇɴᴛ,
Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 04–0090. Submitted on briefs September 27, 2004.—Decided
December 28, 2004.*

2005 WI App 12

(Also reported in 692 N.W.2d 286.)

† Petition to review denied 3-8-2005.

On behalf of the petitioners-appellants-cross-respondents, the cause was submitted on the briefs of *Mitchell W. Quick* of *Michael, Best & Friedrich, LLP* of Milwaukee.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *William H. Ramsey*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. John Kruczek and Kruczek Construction, Inc. (collectively, Kruczek), appeal a judgment affirming the Department of Workforce Development's debarment of Kruczek from municipal and state public works projects for six months. Kruczek contends among other things that DWD failed to abide by certain mandatory timelines, invalidating Kruczek's debarment. The court upheld DWD's interpre-

tation of the time frame as directory. We agree with DWD's interpretation and therefore affirm that portion of the judgment. Kruczek's additional arguments will be discussed below. DWD cross-appeals the portion of the judgment determining it could only debar Kruczek from municipal, not state, projects. We conclude the circuit court lacked jurisdiction to consider that issue, and we therefore reverse that portion of the judgment.

## Background

¶ 2. Kruczek is a contractor that works primarily on municipal sewer and water projects. Municipal projects are subject to the "prevailing wage" rules of Wis. Stat. § 66.0903.[1] On January 7, 1999, a prevailing wage complaint was filed with DWD on behalf of Kruczek's former employee Justin Francken.[2] Francken complained Kruczek had improperly paid him for three projects by paying him at the lower "flagman" rate instead of the "topman" rate and by neglecting to pay overtime. The complaint was amended on April 8, 1999, to correctly identify the projects at issue.

¶ 3. According to Kruczek, it initially attempted to settle the claim. When that was unsuccessful, Kruczek responded to the complaint on August 6, 1999, denying any wrongdoing. Kruczek stated it correctly paid Francken at the flagman rate.

¶ 4. In January 2000, M.J. Dixon was assigned as a new investigator on the claim. On February 3, 2000, Kruczek sent information at Dixon's request. On February 23, Dixon issued preliminary findings that Kruc-

---

[1] All references to the Wisconsin Statutes and Administrative Code are to the 2001–02 version unless otherwise noted.

[2] DWD states, and Kruczek does not dispute, that the claim was processed as a Wis. Stat. § 109.09 wage claim.

zek failed to pay Francken the correct amounts, resulting in a deficiency of over $4,400.

¶ 5. On February 29, Kruczek requested an informal hearing, essentially appealing Dixon's findings. The hearing was scheduled for June 27, 2000, with Robert Anderson presiding as the examiner. During the hearing, Kruczek proposed a settlement of just under $3,800.

¶ 6. As part of the settlement, Kruczek drafted a release for Francken to sign. The release asked Francken to give up claims under various federal acts as well as the right to sue in tort or contract. DWD, by Anderson, objected to the initial draft because Francken was entitled to his wages under the statutes regardless of any other claim. Additionally, that language had not been approved at the hearing.

¶ 7. A revised release was ultimately executed on August 24, 2000. It contained an explicit denial of wrongdoing by Kruczek and a statement that the wage complaint was to be "withdrawn and dismissed with prejudice." The release was signed only by Francken. Once Francken signed the release, DWD accepted the settlement and closed the case.

¶ 8. On August 24, 2001, DWD sent Kruczek a "Notice of Proposal to Debar," signed by Anderson and based on the wage violations in Francken's complaint. Debarment is governed by Wis. Admin. Code ch. DWD 294 under rule-making authority granted by Wis. Stat. §§ 66.0903(12)(e) and 103.49(7)(e). The notice incorporated by reference the findings of investigator Dixon from the wage complaint.

¶ 9. Kruczek replied to the notice on September 17, and Anderson issued proposed findings of fact and a proposed order on October 3. On October 22, 2001, Kruczek responded to the proposed order. On February 28, 2003, DWD issued a final decision by Howard

Bernstein, debarring Kruczek from bidding on state and municipal projects for six months.

¶ 10. Kruczek appealed to the circuit court, which essentially upheld DWD's final decision. However, the court agreed with Kruczek that because Francken's claim arose from an alleged violation of the prevailing wage laws for municipal, not state, projects, DWD exceeded its authority in debarring Kruczek from state projects. Kruczek appeals the part of the judgment affirming DWD, raising seven main arguments: (1) DWD took too long to issue its debarment decision under the administrative code; (2) this delay violated due process; (3) claim and issue preclusion prevent DWD's debarment action; (4) the "withdrawal" of the wage complaint left insufficient evidence on which DWD could base a debarment decision; (5) DWD did not provide an impartial decision maker; (6) DWD failed to find a major violation of the wage law; and (7) DWD failed to find Kruczek's debarment was in the public interest. DWD cross-appeals the circuit court's determination that it could not debar Kruczek from state projects.

## Discussion

### I. Whether the code is mandatory or directory

█

¶ 11. WISCONSIN ADMIN. CODE § DWD 294.05(5)(b) says that upon appeal of proposed findings of fact, the department's representative "shall issue a findings of fact and final order within 30 calendar days of the receipt of the last argument filed." Kruczek maintains that this thirty-day time frame is mandatory and the debarment is therefore invalid because it took DWD fifteen months to issue its determination. DWD maintains the time frame is directory.

¶ 12. Interpretation of an administrative rule or regulation, like statutory interpretation, is a question of law this court reviews de novo. *Trott v. DHFS*, 2001 WI App 68, ¶ 4, 242 Wis. 2d 397, 626 N.W.2d 48. We review the agency's determination, not the trial court's. *Id.* We are not bound by the agency's legal conclusions although we generally give great weight deference to an agency's interpretation of its own rules unless it is inconsistent with the language of the regulation or clearly erroneous.[3] *Irby v. Bablitch*, 170 Wis. 2d 656, 659, 489 N.W.2d 713 (Ct. App. 1992).

¶ 13. When interpreting administrative regulations, we generally use the same rules as those for statutory construction. *State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998). "The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." *Karow v. Milwaukee Cty. Civ. Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978).

---

[3] There are lower levels of deference. We give due weight consideration when an agency determination is " 'very nearly' one of first impression." *See Sauk County v. WERC*, 165 Wis. 2d 406, 413–14, 477 N.W.2d 267 (1991) (citation omitted). We give no weight, reviewing the interpretation entirely de novo, when the agency has no special experience determining an issue or it is completely a question of first impression. *See id.* at 414. Contrary to Kruczek's assertion, however, the question of first impression in this set of standards refers to the agency's opportunity to interpret and apply its regulations, not to the courts' opportunity to judicially review the agency's actions. For this reason, we reject Kruczek's suggestion to apply a de novo standard of review. Interpretation of Wis. Admin. Code § DWD 294.05 may be a question of first impression for the courts, but Kruczek provides no evidence to show it was a question of first impression for DWD.

When the words "shall" and "may" appear in the same section of a statute, we can infer the author was aware of the different denotations and intended the words' precise meanings. *Id.* at 571.

¶ 14. However, statutes specifying a time period in which an agency is to act are directory unless the statute denies the exercise of power after such time or the nature of the action or the statutory language shows the time was meant to be a limitation. *State ex rel. St. Michael's Ev. Luth. Church v. DOA*, 137 Wis. 2d 326, 336, 404 N.W.2d 114 (Ct. App. 1987). Ultimately, there are four factors we consider when determining whether the word "shall" is mandatory or directory. We consider: (1) the objectives to be accomplished by the statute or regulation; (2) the statute's history; (3) consequences of an alternate interpretation; and (4) whether a penalty is imposed for the violation of the time limit. *State v. Perry*, 181 Wis. 2d 43, 53–54, 510 N.W.2d 722 (Ct. App. 1993).

## A. Code's Objective and History

¶ 15. The objective of Wis. Admin. Code ch. DWD 294 is straightforward, set out § 294.01(2):

(a) Every state agency or local governmental unit shall solicit bids from, negotiate with, award contracts to, and approve or allow subcontracts with only responsible contractors. Debarment is an appropriate means to effectuate this policy.

(b) Debarment is a serious action imposed only to protect the public interest.

Although Kruczek contends that the statutory objective is immediate prevailing wage compliance under Wis. Stat. § 66.0903(12), it points us to no language to

support that interpretation against the clearly stated policy of the administrative code.

¶ 16. Wisconsin Admin. Code ch. DWD 294 was created in response to rule-making authority granted to DWD under Wis. Stat. §§ 66.0903(12) and 103.49(7).[4] These sections require municipal (§ 66.0903) and state (§ 103.49) agencies to grant public works contracts only to contractors who abide by prevailing wage laws. The applicable statutes were created in 1985 and the administrative code was developed in 1987, although nothing in the code's history guides our interpretation.

¶ 17. While it might be preferable for DWD to act as quickly as possible in a debarment proceeding—to protect the public interest by preventing contracts from being awarded to irresponsible contractors—it is also important that DWD be convinced debarment is appropriate. That is, DWD must be convinced that a contractor has actually violated prevailing wage laws.

¶ 18. Moreover, expediency might be necessary if debarment were a permanent punishment—the sooner the case is adjudicated, the sooner an irresponsible contractor would be banned from public projects. However, the maximum period for debarment is three years. Wis. Admin. Code § DWD 294.05(7). Thus, even the most unscrupulous contractors might return to bid on public projects at some point. We therefore see no pressing need for exigency in a debarment proceeding. Protection of the public interest is effected at whatever time debarment begins. It is therefore unnecessary to construe § DWD 294.05(5)(b) as mandatory to achieve the objectives of the code.

---

[4] Both Wis. Stat. §§ 66.0903(12) and 103.49(7) are subsections regarding debarment. Section 66.0903(12)(e) says "The department shall promulgate rules to administer this subsection." The language of § 103.49(7)(e) is identical.

## B. Alternate Interpretations and Penalties for Noncompliance

¶ 19. When evaluating the consequences of an "alternate interpretation" we essentially compare the differences between interpreting "shall" as mandatory or directory. As such, we have said that time limits may be construed as directory if allowing something to be done after the time prescribed does not result in injury. *Karow*, 82 Wis. 2d at 572. Conversely, when failure to act within the prescribed time frame works to create an injury, we construe the time limit as mandatory. *Id.*

¶ 20. Thus, in *Karow*, where an employee was suspended without pay pending action by the Civil Service Commission, the supreme court interpreted the applicable time period to be mandatory because any delay in adjudication forced Karow to continue on unpaid suspension. *Id.* at 573. By contrast, the nursing home under investigation in *St. Michael's* was allowed to continue operating pending a hearing, thereby suffering no economic loss, and we construed the applicable time frame as directory. *St. Michael's*, 137 Wis. 2d at 337–38.

¶ 21. Here, Kruczek shows no injury resulting from the fifteen-month delay. He was not prohibited from working or bidding on projects pending the determination by DWD. Therefore, we need not construe the time frame as mandatory in order to avoid injury.

¶ 22. Finally, nothing in the administrative code suggests that DWD loses jurisdiction or competence to proceed in the event it fails to render a debarment decision in the time frame specified in the code. *See id.* at 336.

¶ 23. Because Kruczek suffers no harm from a directory interpretation and because nothing suggests a penalty is imposed for DWD's noncompliance, we conclude the thirty-day time limit is directory. Although a fifteen-month delay in issuing a determination is not an example of government efficiency, it is not fatal to DWD's debarment order.

## II. Due Process

■■■■

¶ 24. Kruczek contends the fifteen-month delay was "arbitrary, capricious, unreasonable, a violation of due process, and an abuse of [DWD's] discretion." It implies it was arbitrarily deprived of its right to engage in its business, because contractors need to plan and, arguably, will not do so with the threat of debarment hanging over them. We disagree.

■■■■■

¶ 25. Due process determinations are questions of law we decide de novo. *State v. Sorenson*, 2002 WI 78, ¶ 25, 254 Wis. 2d 54, 646 N.W.2d 354. Kruczek does not identify whether it is raising a substantive or procedural due process complaint. However, this is ultimately of no import because " '[a]bsent a mandatory requirement, administrative delay in issuing a decision is not reversible error' on due process grounds." *See Seebach v. PSC*, 97 Wis. 2d 712, 729, 295 N.W.2d 753 (Ct. App. 1980) (five-year delay) (citing *Chicago & N.W. R.R. v. LIRC*, 91 Wis. 2d 462, 480, 283 N.W.2d 603 (Ct. App. 1979)). Moreover, because Kruczek was not prohibited from working or bidding pending the debarment decision, it has failed to show any injury. Even its complaint about the need to plan is hypothetical—that *some* contractors will not bid on projects while a debar-

578

ment decision is pending. Kruczek did not argue that *it* stopped bidding during the fifteen months.[5]

## III. Claim and Issue Preclusion

¶ 26. Kruczek complains DWD should be estopped from its debarment action by application of either claim or issue preclusion. It reasons that because an alleged wage violation is the basis for the debarment proceedings and the Wis. Stat. § 109.09 wage claim was resolved, DWD cannot now use it against Kruczek. We disagree.

¶ 27. Whether a preclusion doctrine applies presents a question of law we review de novo. *State v. Parrish*, 2002 WI App 263, ¶ 14, 258 Wis. 2d 521, 654 N.W.2d 273. Under claim preclusion, a final judgment is conclusive in subsequent actions between the same parties or their privies involving all matters that could have been litigated in the first proceedings. *Id.* Thus, for claim preclusion to apply, there must be: (1) identity between the parties; (2) identity between the causes of action; and (3) a final judgment on the merits in the first action. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995).

¶ 28. Under issue preclusion, a final judgment bars relitigation of a factual or legal issue actually litigated and decided in an earlier action. *Parrish*, 258 Wis. 2d 521, ¶ 14. To apply issue preclusion, (1) the

---

[5] Even after the debarment, Kruczek would have been allowed to complete projects on which it had begun bidding or working prior to the debarment decision.

579

issue in both actions must be the same and have been actually litigated, and (2) the party against whom preclusion is asserted must have been a party, in privity with a party, or had an identity of interest with the party to the previous litigation. *State v. Miller*, 2004 WI App 117, ¶ 19, 274 Wis. 2d 471, 683 N.W.2d 485. If both criteria are satisfied, the court must determine whether application of issue preclusion would be fundamentally unfair, considering some or all of several factors. *See Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 237–38, 554 N.W.2d 232 (Ct. App. 1996). We conclude neither doctrine applies because there is neither privity between the parties nor is there an identity between the causes of action.[6]

¶ 29. A wage claim under WIS. STAT. § 109.09 involves a question of whether wages are owed to an employee, and the employee, not DWD, is the complainant. While DWD is authorized to investigate a claim, attempt to adjust the wage claim, commence an action in the circuit court, or refer the case to a district attorney, these actions are all on behalf of the employee. *See* WIS. STAT. § 109.09(1). Indeed, an aggrieved employee need not even ask DWD to resolve the wage dispute—the employee can bring his or her own claim in circuit court. *See* WIS. STAT. § 109.03(5). DWD has no interest in the outcome of a wage claim except to the

---

[6] We also question whether the settlement of the wage claim in this case constitutes a valid, final judgment. While a settlement may so operate, the case on which Kruczek relies was one in which the settlement was approved by the court. *See Great Lakes Trucking Co. v. Black*, 165 Wis. 2d 162, 168, 477 N.W.2d 65 (Ct. App. 1991). Moreover, as DWD points out, it has no adjudicatory powers under the wage claim statute, WIS. STAT. § 109.09(1). However, we need not resolve this issue because application of either doctrine fails on other grounds.

extent it has been charged by the legislature to investigate and attempt to settle claims; it receives no payment from a wage settlement beyond costs. *See* WIS. STAT. § 109.03(6). The objective of a § 109.09 wage claim is to pay an employee the full wages he or she has earned and is owed. The only penalties specified in WIS. STAT. § 109.11 are monetary damages. Ultimately, if there is no settlement, the circuit court—not DWD—will adjudicate the dispute. *See* WIS. STAT. § 109.11(1)(c).

¶ 30. Under WIS. ADMIN. CODE § DWD 294.05 debarment actions, DWD is a complainant in its own right, enforcing its rules as directed by the legislature. The objective under the administrative code is to prevent contractors who violate WIS. STAT. § 66.0903 from working for municipal government entities.[7] Section DWD 294.05 is used against public works contractors; a wage claim under WIS. STAT. § 109.09 can be against any type of employer. An aggrieved employee with a wage claim has absolutely no interest in the outcome of a debarment proceeding; he or she gains nothing and the debarment is not ordered to benefit the employee. While an aggrieved employee who made a wage claim might come into play as a witness in a debarment proceeding, he or she is not a party to the action. DWD is authorized to make the debarment determination, not the circuit court. WIS. ADMIN. CODE § DWD 294.05.

¶ 31. Because of different objectives between a wage claim and debarment, we conclude that there is no identity between causes of action. Because the interests of an aggrieved employee and DWD differ in both types of actions, we further conclude there is no privity between the parties—DWD and Francken—to the wage claim on the one hand and the debarment proceeding on the other.

---

[7] Or state entities under WIS. STAT. § 103.49.

## IV. Sufficiency of the Evidence

¶ 32. Kruczek argues that the wage claim was supposed to be "withdrawn and dismissed" under Francken's release, and DWD accepted this settlement. Thus, Kruczek argues the record of any findings from that proceeding were eliminated and could not be used in the debarment proceedings. It contends the record "was, in essence, expunged by the withdrawal and dismissal of the wage complaint under the terms of the Release." We know of no law, and Kruczek cites none, that provides the facts constituting the record evaporate once a claim is settled or withdrawn. We need not consider arguments unsupported by reference to legal authority. *State v. Shaffer*, 96 Wis. 2d 531, 545–46 n.3, 292 N.W.2d 370 (Ct. App. 1980).

¶ 33. Further, there is no indication DWD intended to make the release binding on itself. Rather, its "acceptance" letter suggests that it considered Kruczek's settlement to fully compensate Francken, thereby absolving DWD of any further need to investigate the wage claim or to refer the case to the district attorney for further action. *See* WIS. STAT. § 109.11(1)(a). In other words, it "accepted" a satisfactory action by the employer to make the employee whole. It did not bind itself to specific terms of a settlement or release. Kruczek was allowed by the release to maintain that it committed no wage violation, but the record of the dispute and its settlement remain.

## V. Impartial Decision Maker

¶ 34. Kruczek complains it was denied the right

to an impartial decision maker because Robert Anderson, who investigated the wage complaint, also issued the notice of the proposal to debar Kruczek and the proposed findings of fact. Kruczek also complains Anderson acted as Francken's attorney by insisting on changes to the proposed release.

¶ 35. Kruczek is indeed entitled to a fair hearing by an unbiased decision maker. *See Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975). However, the

> contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that . . . conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47. Moreover, the Supreme Court noted it could "find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing." *Id.* at 49.

¶ 36. While Anderson did participate in some fact-finding for the wage claim, Kruczek neglects in its argument to mention that Dixon completed the initial investigation. Moreover, although Anderson issued the debarment notice and prepared the proposed findings of fact and the order, it was Bernstein who issued the final debarment decision, modifying Anderson's proposed order and factual findings. We are therefore unconvinced that Anderson's participation in both the

wage claim and debarment proceedings was constitu-tionally impermissible.[8]

## VI. Department Error

¶ 37. Under WIS. STAT. § 66.0903(12)(c), debar-ment does not apply to a contractor "who in good faith commits a minor violation" of the section. Kruczek argues DWD erred in its debarment because it never found, and there is no evidence of, a bad faith major violation. Kruczek, however, is simply taking issue with DWD's inferences from the facts.

¶ 38. An agency's factual findings will not be overturned if supported by substantial evidence in the record. WIS. STAT. § 227.57(6); *Hutson v. State Pers. Comm'n*, 2003 WI 97, ¶ 29, 263 Wis. 2d 612, 665 N.W.2d 212. Weight and credibility are for the agency to deter-mine, not this court. *See* WIS. STAT. § 227.57(6). When more than one reasonable inference can be drawn, the agency's finding is conclusive. *VTAE Dist. 13 v. ILHR Dept.*, 76 Wis. 2d 230, 240, 251 N.W.2d 41 (1977).

¶ 39. Anderson, preparing the proposed findings, noted that Francken worked for Kruczek for four months and was underpaid by almost $4,000, or $1,000 per month. Anderson did not believe that Francken's "accidental" classification as a flagman instead of a topman was an innocent mistake, considering the time

---

[8] To the extent Kruczek complains about Anderson's changes to its proposed release, we disagree he did so as Francken's advocate. DWD's authority in a wage claim extends solely to investigating how much the employee is lawfully owed. Kruczek wanted to limit other remedies Francken might have had. It was not inappropriate for DWD to have considered those limitations beyond the scope of a wage claim.

records indicated on their face that Franken was a topman and because Kruczek has worked on prevailing wage rate projects since 1995.

¶ 40. Bernstein made similar determinations in the final order. He noted that Franken was substantially underpaid, was not paid overtime in a week when Francken worked more than ten hours per day, was not paid within thirty-one days, and was not issued a pay statement when given his check. Bernstein believed "[I]t is highly unlikely [Kruczek] mistakenly considered a top man like Mr. Franken [sic] a flag person . . . highly unlikely they mistakenly forgot to pay him his overtime, to give him a pay statement with his pay or to pay him within 31 days." DWD is not required to make an explicit finding on the magnitude of the violation. Its inference that the multiple errors demonstrated bad faith errors of a major magnitude is reasonable and supported by the record. We defer to it.

## VII. Public Interest

¶ 41. WISCONSIN ADMIN. CODE § DWD 294.05(1)(a) notes that debarment is done for the public interest. Kruczek complains DWD erred by debarring it because there is no evidence to support a finding that its debarment is in the public interest.

¶ 42. In the first place, Kruczek fails to show that DWD is required to make such a finding. Moreover, DWD has succinctly explained in its brief why debarment for violating the wage rules is in the public interest:

> the purpose of the prevailing wage laws is "to stimulate and protect the economic position of individual workers whose jobs are in execution of . . . [public works

projects.]" . . .[9] That interest is clearly harmed when a contractor intentionally underpays even one worker with conscious disregard of the law. Further, taxpayers expect that their money will be used for what it was intended to be used for. . . . [That is,] to pay the wages provided for in the contracts, not skimmed off the top by underpaying contractors. Third, there is no way of knowing whether other contractors bidding for the contracts at issue might have won those contracts if Kruczek costed them to include the proper wages. A level playing field in public works bidding is clearly an additional public interest that is served by debarring those who consciously ignore the law.

We agree with DWD's argument and reject Kruczek's complaint.

## VIII. Cross-Appeal

¶ 43. At the time of the underlying wage violation, Kruczek was working on a municipal project and the prevailing wage requirements would have therefore been governed by the municipal project regulations in WIS. STAT. § 66.0903, not the state project regulations under WIS. STAT. § 103.49. For that reason, Kruczek contends it was error for DWD to debar it from both municipal and state projects. The circuit court agreed the debarment was too broad and reversed the debarment from state projects. DWD cross-appeals.

¶ 44. DWD contends that WIS. ADMIN. CODE ch. DWD 294 is a response to both WIS. STAT. §§ 66.0903

---

[9] DWD misquotes *Green v. Jones*, 23 Wis. 2d 551, 559, 128 N.W.2d 1 (1964). However, the actual language applies equally. "[T]he legislature intended to generally stimulate economic activity by increasing and reinforcing the purchasing power of individual workers who performed tasks in execution of the highway improvement [public works projects]."

and 103.49. Indeed, the code encompasses both statutes, defining debarment as an action taken "to exclude a contractor from performing work . . . for any state agency or local government," Wis. Admin. Code § DWD 294.02(5), and providing that "no state agency or local governmental unit may . . . [hire] a debarred contractor." Wis. Admin. Code § DWD 294.04(1).

¶ 45. Kruczek contends, however, that it is not challenging Wis. Admin. Code ch. DWD 294, only the power of DWD to debar it from state projects based on a violation of Wis. Stat. § 66.0903. Kruczek fails to appreciate that DWD has no enforcement power under § 66.0903 and instead was instructed by the legislature to create administrative rules for the statute's enforcement. This resulted in ch. DWD 294. That chapter essentially provides that regardless which statutory violation results in debarment of a contractor, neither a state agency nor a local governmental unit can hire that contractor.

■■■

¶ 46. By necessity, Kruczek is challenging Wis. Admin. Code ch. DWD 294 but has failed to follow Wis. Stat. ch. 227 procedures for challenging the validity of a rule. Kruczek failed to serve the joint committee for review of administrative rules in accordance with Wis. Stat. § 227.40(5). Failure to serve the committee deprives the court of jurisdiction to hear a challenge to the rule. *Richards v. Young*, 150 Wis. 2d 549, 558, 441 N.W.2d 742 (1989). The portion of the judgment holding DWD could not bar Kruczek from state projects is accordingly reversed.

*By the Court.*—Judgment affirmed in part; reversed in part. No costs to either party.