Selina MATA,
Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF CHILDREN & FAMILIES,
Respondent-Respondent.†

Court of Appeals

*No. 2013AP2013. Oral argument April 29, 2014.*
*—Decided May 13, 2014.*

2014 WI App 69

(Also reported in 849 N.W.2d 908.)

† Petition for Review dismissed September 17, 2014.

486

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Patricia DeLessio* of Legal Action of Wisconsin, Inc., of Milwaukee, with oral argument by *Patricia DeLessio*.

On behalf of the respondent-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Debra L. Remington*, assistant attorney general, with oral argument by assistant attorney general *Rebecca A. Paulson*.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J.   Selina Mata appeals an opinion of an Administrative Law Judge in the Division of Hearings and Appeals upholding a decision by the Department of Children and Families that she received more Wisconsin Shares child-care subsidy payments than she was entitled to receive, due to, among other

reasons, the fact that her most recent employer was not a "qualified employer." Mata challenges the ALJ's decision based on the following grounds: (1) it relies on policy that is actually an administrative rule that was not properly promulgated; (2) it is contrary to state law and administrative rules; and (3) the denial of her request to have the overpayment amount reduced by $541.42 is contrary to agency policy and prior agency practice. For the reasons that follow, we affirm the Department on the first two issues, but reverse on the third and remand with directions to have the overpayment amount reduced by $541.42.

## BACKGROUND

¶ 2. Mata was a recipient of child-care subsidies via the Wisconsin Shares program. Prior to November 2011, Mata was eligible for and received Wisconsin Shares child-care payments based in part on her employment with Sam's Discount. On November 5, 2011, Mata lost her job with Sam's. Mata did not report the loss of her job to the Department and she continued receiving subsidized child care payments. Mata was then hired by Little Caesars on December 17, 2011, which she reported to the Department on January 13, 2012. Mata's employment with Little Caesars ended on March 10, 2012, and she began working for El Corre Camino on March 14, 2012. She reported this change in employment to the Department on April 5, 2012.

¶ 3. In May 2012, the Department issued a notice advising Mata that she had received more child-care payments than she was eligible for between November 6, 2012, and April 30, 2012, which resulted in an overpayment of $4,479.97. The notice stated that Mata's ineligibility was based both on her failure to report the changes in her employment status and the

Department's determination that El Corre Camino was not a "qualified" employer under the Department's policy manual. In response to the notice of overpayment, Mata requested a hearing before the Division of Hearings and Appeals.

¶ 4.  At the hearing that followed, Mata conceded that she was overpaid while she was between jobs in November 2011 and December of 2012—an overpayment of $2,512. However, she contested the overpayment determination for the period of March 11, 2012, through April 30, 2012—an alleged overpayment of $1,967.97.[1] Mata argued that because she was employed by El Corre Camino during this period, she was eligible for the child care payments she received.

¶ 5.  The Department responded, as is pertinent here, that El Corre Camino was not a "qualified employer" as defined by § 1.5.3.1 of the Wisconsin Shares Child Care Assistance Manual. The Manual states that verification of unsubsidized employment is not complete without the employer's Federal Identification Number (FEIN), and additional employer items must be verified if the reported employment appears to be questionable. The Department explained that El Corre Camino was not considered "qualified" based on the following:  (1) it did not have a FEIN; (2) it did not report Mata's hiring or the wages paid to unemployment insurance; and (3) it did not have an active worker's compensation policy.

¶ 6.  At the hearing the Department also acknowledged, however, that it adheres to the Manual's suggested policy of granting short-term authorizations for

---

[1] There were no alleged overpayments for January and February 2012.

child-care expenses when an employer's "qualified" status is in question. Under this policy, individuals may be approved for child care payments for up to thirty days after their hire date while the Department determines whether the employer is qualified. At the hearing, Tamika Terrella, a senior child-care subsidy specialist for the Department, testified that if Mata had timely reported her employment with El Corre Camino, she would have been eligible for a short-term authorization to receive payments from March 14 (her start date) through April 14 (thirty days after her start date). Because she did not report her employment within ten days as required, this short-term authorization would be modified. Terrella testified that, given that Mata reported her employment midweek on April 5 (a Thursday), and given that the above-described payments were calculated starting with the first day of each week (which in this case would have been Sunday, April 1), the Department would be willing to eliminate its overpayment claim for the first two weeks of April; in other words, for the time between Mata's reporting of the employment and thirty days from her start day. This would reduce Mata's overpayment by $541.42.

¶ 7. The ALJ issued a decision dated October 23, 2012, concluding that the Department was correct to establish an overpayment of $4,479.97. The ALJ found that during the relevant periods from November 6, 2011 through April 30, 2012, Mata was either not employed or not employed by a "qualified employer." Mata requested a rehearing and, after briefing, a decision was issued on February 21, 2013. The ALJ again upheld the Department's determination that Mata was overpaid in the amount of $4,479.97. In its decision, the ALJ denied Mata's request to have the overpayment amount reduced by $541.42—which would have been

consistent with Terrella's testimony—on the basis that there was no "short-term" authorization and because the policy of allowing such authorizations was merely "suggested." Mata subsequently filed a petition for review. The trial court affirmed, and Mata now appeals.

ANALYSIS

¶ 8. On appeal, Mata's challenge is limited to the overpayment determination for March 11, 2012 through April 30, 2012, which amounts to an overpayment of $1,967.97. Mata challenges the ALJ's decision based on the following grounds:    (1) that it relies on a policy that is actually an administrative rule that was not properly promulgated; (2) that it is contrary to state law and administrative rules; and (3) that the denial of the request to have the overpayment amount reduced by $541.42 is contrary to agency policy and prior agency practice. The parties agree that there are no factual disputes.

A.    *This court does not have competency to determine whether the Department's "qualified employer" policy is in fact an administrative rule because Mata failed to serve the Joint Committee for Review of Administrative Rules with a copy of her petition for declaratory judgment.*

¶ 9.    Mata challenges the validity of the policy provisions relied upon by the ALJ to determine that her employer was not "qualified"—*i.e.,* §§ 1.5.3 and 1.5.3.1 of the Department's "Wisconsin Shares Child Care Assistance Manual"—on the basis that the policy actually states an administrative rule that has not been promulgated according to law. Mata argues that the

492

policy is actually a rule because it establishes who constitutes a "qualified employer" for the purposes of the Wisconsin Shares program; it applies to everyone receiving Wisconsin Shares, a group that can be enlarged; and it also has the force of law. *See, e.g., Cholvin v. DHFS*, 2008 WI App 127, ¶ 22, 313 Wis. 2d 749, 758 N.W.2d 118. She argues that because the policy actually states a rule that has not been properly promulgated, the policy is invalid, and DCF did not have the authority to recover overpayments.

¶ 10.  We cannot decide this issue because it is not properly before this court. This is because, as the trial court determined, this court does not have competency to review it. Under WIS. STAT. § 227.40(5) (2011–12),[2] Mata was required to serve the Joint Committee for Review of Administrative Rules with a copy of her petition for declaratory judgment; however, she did not do so. Unfortunately, the consequence for Mata's failure to properly serve the Joint Committee is lack of jurisdiction to hear the case.

¶ 11.  We find *Kruczek v. DWD*, 2005 WI App 12, ¶ 46, 278 Wis. 2d 563, 692 N.W.2d 286, instructive. In *Kruczek*, this court, relying upon *Richards v. Young*, 150 Wis. 2d 549, 558, 441 N.W.2d 742 (1989), held that the court did not have jurisdiction over the issue of whether an administrative rule was valid when the petitioner challenging the validity of the rule failed to serve the Joint Committee. *Kruczek*, 278 Wis. 2d 563, ¶ 46. The Department of Workforce Development issued a decision debarring Kruczek, a contractor, from bidding on municipal and state public works projects for six months based on violations of the "prevailing wage" rules of WIS. STAT. § 66.0903. *Kruczek*, 278

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

Wis. 2d 563, ¶¶ 1–2. Kruczek argued that he should not have been debarred from both municipal and state projects because he was working on only a municipal project at the time of the underlying wage violation. *Id.*, ¶ 43. He claimed that this was a challenge to Wis. Stat. § 66.0903, the statute governing municipal project violations. *Kruczek*, 278 Wis. 2d 563, ¶ 45. However, we held that this was actually a challenge to Wis. Admin. Code § DWD 294.01, the provision that authorized the Department to debar a contractor from both municipal and state projects. *Kruczek*, 278 Wis. 2d 563, ¶¶ 45–46. Because this was actually a challenge to an administrative rule, the contractor was required to serve the Joint Committee for Review of Administrative Rules. *See id.*, ¶ 46. Having failed to do so, the court lacked jurisdiction to hear this challenge.[3] *Id.*

¶ 12.    As the Department pointed out in its supplemental brief, Mata's argument that the policy outlined in the Wisconsin Shares Child Care Assistance Manual is actually an administrative rule "squarely implicates the same JCRAR requirement discussed in *Kruczek*." Pursuant to Wis. Stat. § 227.40(4)(a), "In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures." Because Mata's argument falls under § 227.40(4)(a), she was required to serve JCRAR with a copy of her petition. *See* § 227.40(5). Because she failed to do so, this court lacks competency to review the issue.

[3] The Supreme Court has clarified that the issue "is better characterized as one of competency, not one of subject matter jurisdiction." *DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 21, 299 Wis. 2d 1, 727 N.W.2d 311.

¶ 13. While Mata argues that *Kruczek* and the requirements of WIS. STAT. § 227.40 do not apply to her because she is challenging a policy, not a rule, she is mistaken. *Heritage Credit Union v. Office of Credit Unions*, 2001 WI App 213, 247 Wis. 2d 589, 634 N.W.2d 593, makes clear that a challenge to a policy on the basis that it is actually a rule is to be construed as a challenge to the validity of a rule, and that the requirements of § 227.40 do indeed apply:

> [T]his case involves a challenge to the decision of an administrative agency on the ground that the decision is based on a policy that is a "rule" within the meaning of WIS. STAT. § 227.01(13). Therefore, we must consider the specific statutes that apply to such a challenge.
>
> . . . .
>
> We have considered whether Heritage's challenge is a challenge to "the validity of a rule" within the meaning of WIS. STAT. § 227.40 since no rule-making procedures of any kind ha[ve] occurred. We conclude that it is.

*See Heritage Credit Union*, 247 Wis. 2d 589, ¶¶ 22, 24. We further explained:

> Since "promulgat[ion] without compliance with statutory rule-making procedures" is one ground for declaring a rule invalid under [WIS. STAT.] § 227.40, § 227.40 logically encompass policies or other statements, standards, or orders that meet the definition of "rule" under WIS. STAT. § 227.01(13) but have not been promulgated as required by WIS. STAT. § 227.10.

*See Heritage Credit Union*, 247 Wis. 2d 589, ¶ 24.[4]

---

[4] Mata pointed out at oral argument that "[t]he purpose of serving the JCRAR . . . [which] is to give the JCRAR either the opportunity to avoid the litigation by suspending the rule or

¶ 14. Therefore, because we do not have competency to consider whether the Department's policy regarding who is a "qualified" employer is actually an administrative rule, we cannot consider this argument.

B. *The Department's decision that Mata was overpaid is consistent with state laws and administrative rules because its reading of the applicable statutes and rules is more reasonable than Mata's, and Mata's interpretation would lead to absurd results.*

██

¶ 15. As a preliminary matter, we note that both parties agree that "due weight" deference applies here. *But see Lake Beulah Mgmt. Dist. v. DNR*, 2011 WI 54, ¶ 23, 335 Wis. 2d 47, 799 N.W.2d 73 ("When interpreting the scope of an agency's authority conferred by statute, we give no deference to the agency's interpretation of its own authority."). "We afford one of three levels of deference to an agency's interpretation of a statute: great weight, due weight, or no deference." *See id.* There is no dispute that the Department is the agency charged with administering Wisconsin Shares and enforcing WIS. STAT. § 49.155 ("Wisconsin Shares; child care subsidy."). Moreover, the Department does

defend the rule in court which it has previously approved," *see Richards v. Young*, 150 Wis. 2d 549, 555, 441 N.W.2d 742 (1989), may not truly be served in instances such as the one in *Heritage Credit Union v. Office of Credit Unions*, 2001 WI App 213, 247 Wis. 2d 589, 634 N.W.2d 593, where a litigant is challenging a policy rather than administrative rule because there is no administrative rule to suspend or defend. While we agree that Mata's argument has merit, we are bound by the precedent set in *Heritage Credit Union* and *Kruczek v. DWD*, 2005 WI App 12, 278 Wis. 2d 563, 692 N.W.2d 286. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) ("the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals").

not dispute Mata's statement that "there is no evidence that [the Department's] interpretation of the provisions at issue is one of long-standing or that it applied any sort of expertise or specialized knowledge in developing its 'qualified employer' policy." *See MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 30, 328 Wis. 2d 110, 786 N.W.2d 785 (Due weight deference applies when "the agency has some experience in an area but has not developed the expertise that places it in a better position than the court to make judgments regarding the interpretation of the statute."). We therefore agree with the parties that due weight deference applies.

¶ 16.    Mata argues that the Department's decision concluding that she was overpaid child care payments in March and April of 2012 was contrary to law. Under Wis. Stat. § 49.155(1m), one activity establishing a caregiver's eligibility for child care payments is to "[w]ork in an unsubsidized job." *See* § 49.155(1m)(a)2. Mata points out that unsubsidized employment is defined by Wis. Admin. Code § DCF 101.03(35) as "employment for which the Wisconsin works agency provides no wage subsidy to the employer including self-employment and entrepreneurial activities." Mata argues that her employer, El Corre Camino, does not receive wage subsidies and thus she was eligible for the child care payments she received in March and April of 2012.

¶ 17.    The Department responds that Mata was not eligible to receive child care payments during the disputed time period because she failed to timely report changes in her employment and because her employer was not "qualified" under the Department's policy. The Department interprets "unsubsidized job" under Wis. Stat. § 49.155(1m)(a)2. as employment with a legitimate employer—*i.e.,* who has a federal employment identifi-

497

cation number and who complies with state and federal employment regulations. As the ALJ found, "[i]t would not make sense for the legislature to have included illegal employment as an approved activity." The Department urges that its interpretation of unsubsidized employment is necessary to avoid the absurd result of allowing applicants to become eligible for the program by working for any illegal employer as long as it does not receive wage subsidies.

¶ 18. We affirm the Department's determination that Mata was overpaid child care payments because it was based on a reasonable interpretation of what constitutes "unsubsidized employment" for purposes of eligibility under WIS. STAT. § 49.155(lm)(a)2. *See MercyCare*, 328 Wis. 2d 110, ¶ 30. It is reasonable for the Department to construe the statute as limiting eligible employment to only "qualified" employers, meaning legitimate employers with a verified legal status. As the trial court noted, "[e]ligibility for government benefits virtually always entails strict verification procedures and documented compliance with legal requirements." Certainly, it is reasonable to expect that eligibility for child-care benefits requires legitimate, documented employment with an employer who complies with legal employment requirements.

¶ 19. Likewise, the Department's interpretation is the only one that, in our view, would avoid absurd or unreasonable results. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. Mata's literalistic construction— that *any* employment establishes eligibility as long as the employer does not receive wage subsidies—is less reasonable than the Department's interpretation. Under Mata's interpretation, individuals could qualify for child care payments based on any illegal or undocu-

mented employment, which, as the trial court noted, "could range from babysitting to drug dealing." While Mata made a salient point at oral argument that it is highly unlikely that someone involved in an endeavor like illegal drug dealing would actually apply for child-care subsidies, the fact of the matter is that Mata's interpretation does not provide clear, objective criteria that would allow for uniform application of the subsidy program—whereas the Department's interpretation does. *See id.*, ¶ 48 ("scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of . . . [a] statute").

¶ 20.   Accordingly, we affirm the Department's determination that Mata was ineligible to receive child care payments under Wɪs. Sᴛᴀᴛ. § 49.155(lm)(a)2. while she was employed by a non-qualified employer. And we agree with the Department that an overpayment occurred during the time Mata was employed by El Corre Camino. *See* Wɪs. Aᴅᴍɪɴ Cᴏᴅᴇ § DCF 201.04(5)(a)2. (An "overpayment" occurs when child care funds are paid when "[t]he parent failed to report a change in circumstances that may affect his or her eligibility within 10 days after the change" or "[t]he parent was absent from an approved activity under s. 49.155(1m)(a), Stats., without good cause, while the child was in the care of the provider.").

C.   *The denial of Mata's request to have the overpayment amount reduced by $541.42 was contrary to agency policy and prior practice.*

¶ 21.   Mata argues that the decision to deny her request to have her overpayment amount reduced by $541.42 was contrary to agency policy and prior practice. She cites subsidy specialist Terrella's testimony that the

499

Department adheres to the Manual's policy of granting short-term authorizations for child-care expenses when an employer's qualified status is in question. Mata also cites the *"Grannies Day Care"* case, an unpublished Division of Hearings and Appeals Decision, No. CCO 130983 (Jan. 30, 2012), in which the Division concluded that a particular portion of what the Department contended was an "overpayment" was in reality a short-term authorization that the petitioner did not have to pay back under circumstances very similar to hers.

¶ 22.   The Department responds that the overpayment in this case was not a short-term authorization, and that the ALJ was correct in concluding as such. The Department also argues that the ALJ was correct in concluding that Mata's case differs from *Grannies Day Care* because Mata reported her employment later than the required deadline. It also notes, as the ALJ did, that in Mata's circumstances a short-term authorization is only a "suggested" policy, but it is not required.

█

¶ 23.   Wisconsin Stat. § 227.57(8) governs the circumstances here, and provides:

> The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

In other words, under the statute, "administrative agencies may deviate from prior agency policy and practice" only when "a satisfactory explanation is pro-

vided." *See Stoughton Trailers, Inc. v. LIRC*, 2006 WI App 157, ¶ 27, 295 Wis. 2d 750, 721 N.W.2d 102.

¶ 24. The *Grannies Day Care* decision is instructive here. Though the facts of the case are sparse, they indicate that the petitioner was granted a short-term authorization while a determination was made as to whether the petitioner's employer was qualified. In other words, in *Grannies Day Care*, as here, the petitioner was given the child-care subsidy until the Department concluded that the employer was not qualified. In *Grannies Day Care*, the Department argued that because the employer was ultimately found not to be qualified, that the petitioner should have to pay back the subsidy given during the short-term authorization. The Department argued that the payment made pursuant to the short-term authorization should be construed as an "error" because the employer was later determined to be unqualified. The ALJ disagreed, concluding that under the Manual, the validity of a short-term authorization did not depend on a later finding that the employer was in fact qualified. Rather, the correct procedure was to give the subsidy during the thirty-day period without later requiring repayment. In the opinion, the ALJ described the short-term authorization as a "Manual *mandated* procedure." (Emphasis added.)

¶ 25. Consequently, we reverse the ALJ's determination that Mata was not entitled to a $541.42 reduction in overpayment for the first two weeks of April, 2011, and remand the case with instructions to reduce Mata's overpayment total by $541.42. Not only did Terrella, the Department's representative, testify that it is common practice to authorize child care subsidies while the Department's investigation into an employer's legitimacy is pending, but the *Grannies Day Care* case

also supports this conclusion. Moreover, we do not find the ALJ's contention that Mata's case is different from *Grannies Day Care* because there was no clear short-term authorization here persuasive. The circumstances are in fact nearly identical; in each case, the Department provided payment during the time that the petitioner's "qualified" employment status was in question. It does not matter that in *Grannies Day Care* the short-term authorization was clearly announced because the case is substantively the same as Mata's case. Also, it does not matter that Mata reported her employment late because the $541.42 reduction amount factors Mata's delayed reporting into the total. Thus, a decision reversing the ALJ will not encourage late reporting for Wisconsin Shares recipients. Additionally, we are not persuaded by the ALJ's contention that the policy of allowing short-term authorizations is merely a "suggestion," even if the policy does in fact include such language. Terrella's testimony and the *Grannies Day Care* decision make clear that this is a policy that the Department follows, and, absent a satisfactory reason, it should have been followed in Mata's case. *See Stoughton Trailers*, 295 Wis. 2d 750, ¶ 27 (requiring a "satisfactory explanation" to deviate from prior agency policy). Finally, we note that the Department has not supplied any authority to counter the *Grannies Day Care* decision.

¶ 26.   In sum, for all of the foregoing reasons, the order of the Department is affirmed as to the first two issues Mata brings on appeal, and reversed on the third. We therefore remand the case with instructions to reduce Mata's overpayment total by $541.42.

*By the Court.*—Order affirmed in part; reversed in part; and cause remanded with directions.

¶ 27. FINE, J., (*concurring*). I agree with the Majority that we should affirm, reverse, and remand, but write separately because, in my view, the part of *Heritage Credit Union v. Office of Credit Unions*, 2001 WI App 213, 247 Wis. 2d 589, 634 N.W.2d 593, that we must follow is wrong.

¶ 28. As seen from the Majority opinion, the Department of Children and Families determined that Selina Mata's work for the El Corre Camino restaurant did not qualify for Wisconsin Shares child-care payments because during the relevant time the restaurant was "not qualified" under the Department's interpretation of the statute. It based this determination on a policy manual —not a rule.

¶ 29. As material, a person is eligible to "receive a subsidy for child care" if "child care services for that child are needed in order for the individual to . . . . Work in an unsubsidized job, including training provided by an employer during the regular hours of employment." Wis. Stat. § 49.155(1m)(a)2. The Department does not dispute that Mata's work for the restaurant was employment "in an unsubsidized job." If that is all there was here, the Department does not dispute that Mata would have been eligible for the child-care payments at issue. But there is more: the Department's Child Care Policy Manual requires that the "unsubsidized job" be with "a qualified employer who has a Federal Employer Identification Number."[1] Wisconsin Shares Child Care Assistance Manual § 1.5.3(1). The Manual also says that to be a "qualified employer" the employer must:

---

[1] The Department's Child Care Policy Manual also says that "Unsubsidized Employment" (bolding omitted) may also include "Being legitimately self-employed." Wisconsin Shares Child Care Assistance Manual § 1.5.3(2).

- "have a Worker's Compensation insurance policy for its employees unless legally exempt";

- "comply with Wisconsin minimum wage law for all employees";

- "file a New Hire report on the employee within thirty days of the hiring date"; and

- "report wages to Unemployment Insurance unless exempt."

WISCONSIN SHARES CHILD CARE ASSISTANCE MANUAL § 1.5.3.1.

¶ 30. As the Majority notes, the restaurant did not comply with these additional requirements, and, as a result, Mata is forced to return some of the child-care payments she received while she was working at the restaurant. There are, in my view, very real problems with inflicting this financial burden on a person who needs to work and needs child-care payments to work in order to sustain his or her family but who works for a seemingly legitimate business (as the restaurant was) that did not satisfy the five non-statutory requirements the Department imposes by its policy Manual (rather than by a "rule" properly promulgated). Further, and this would in my view guide any analysis as to whether the policy comported with the statutory scheme, it is not reasonable to assume that an employee and child-care-payment recipient such as Mata would be able to determine whether a seemingly reputable business:

- has a federal identification number;

- has a worker's compensation insurance policy for its employees;

- need not have a worker's compensation insurance policy for its employees because the business is "exempt" (how would Mata have discovered that without hiring a lawyer or having sufficient knowledge and

skill to parse the myriad Wisconsin government web sites?);

- pays all its employees the minimum wage (would there be privacy concerns if a new hire asked this question of his or her employer?);

- will timely file the required "New Hire report";

- "report[s] wages to Unemployment Insurance"; or

- need not "report wages to Unemployment Insurance" because the business is "exempt" (again, how would Mata have discovered that without hiring a lawyer or having sufficient knowledge and skill to parse the myriad Wisconsin government web sites?).

¶ 31.   As the Majority notes, however, we may not consider these important questions that, in my view, go to the heart of the requirements that the Department has added to the statute, because Mata did not serve the Joint Committee for Review of Administrative Rules with a copy of her petition for declaratory judgment.

¶ 32.   Wisconsin Stat. § 227.40 permits a party aggrieved by an agency rule to challenge that rule. *See* Wis. Stat. § 227.40(1). As a precondition to such a challenge, however, Wis. Stat. § 227.40(5) requires the party challenging the rule to serve the Joint Committee for Review of Administrative Rules:   "The joint committee for review of administrative rules shall be served with a copy of the petition in any action under this section and, with the approval of the joint committee on legislative organization, shall be made a party and be entitled to be heard." Further, Wis. Stat. § 227.40(4)(a) sets the scope of an in-court challenge to an agency rule:   "In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency *or was promulgated*

505

without compliance with statutory rule-making procedures." (Emphasis added.)

¶ 33. *Heritage Credit Union* held, as we will see, that what I have italicized in Wis. Stat. § 227.40(4)(a), in conjunction with § 227.40(2)(e), requires that a party challenging an agency *policy that has not been adopted as a "rule"* to also serve the agency whose action is being challenged: "[R]eview of the validity of a rule is available under § 227.40(2)(e) only 'if the validity of the rule involved was duly challenged in the proceeding before the agency in which the order or decision sought to be reviewed was made or entered.' " *See Heritage Credit Union*, 2001 WI App 213, ¶ 23, 247 Wis. 2d at 607, 634 N.W.2d at 602. As material, § 227.40(2)(e) provides: "The *validity of a rule* may be determined in any of the following judicial proceedings when material therein . . . *if the validity of the rule* involved was duly challenged in the proceeding before the agency in which the order or decision sought to be reviewed was made or entered." (Emphasis added.)

¶ 34. I agree with the Majority that we are bound by *Heritage Credit Union* and its equating the *challenge to a rule* that is promulgated by an agency with rule-writing authority to the *challenge of an agency policy* that has not been promulgated as a rule, with all the protections and public input afforded to those mostly formal procedures, *see* Wis. Stat. §§ 227.10–227.20. I write this concurrence in the hope that the supreme court will, if Mata files a petition for review, grant that petition and overrule *Heritage Credit Union*'s holding in that regard. Before I turn to *Heritage Credit Union*, however, I look briefly at *Kruczek v. Wisconsin Dep artment of Workforce Development*, 2005 WI App 12, 278 Wis. 2d 563, 692 N.W.2d 286, upon which the Majority also relies.

¶ 35. The Department of Workforce Development in *Kruczek* prevented Kruczek Construction from getting "municipal and state public works projects for six months." *Id.*, 2005 WI App 12, ¶ 1, 278 Wis. 2d at 570, 692 N.W.2d at 290. The Department based its action on existing Department of Workforce Development rules in Wis. Admin. Code ch. DWD 294. *See Kruczek*, 2005 WI App 12, ¶¶ 15–16, 278 Wis. 2d at 575–576, 692 N.W.2d at 293. Kruczek Construction challenged the power of the Department of Workforce Development to prevent it from getting the state-projects work, and *Kruczek* interpreted that challenge in reality as a challenge to the "administrative rules" in Wis. Admin. Code ch. DWD 294. *Kruczek*, 2005 WI App 12, ¶¶ 45–46, 278 Wis. 2d at 587, 692 N.W.2d at 298. Kruczek Construction did not, however, serve the Joint Committee for Review of Administrative Rules, and *Kruczek* held that the failure "deprives the court of jurisdiction to hear a challenge to the rule." *Id.*, 2005 WI App 12, ¶ 46, 278 Wis. 2d at 587, 692 N.W.2d at 299.

¶ 36. *Heritage Credit Union* is a horse of a different color because it held that a party challenging an agency's decision must serve the agency (in *Heritage Credit Union*, the Credit Union Review Board) *even though the party was not challenging a rule in the Wisconsin administrative code.*

¶ 37. Heritage Credit Union was an Illinois-chartered credit union that wanted to open branches in Wisconsin but, with a minor exception, was forbidden to do so by the Wisconsin Office of Credit Unions. *Heritage Credit Union*, 2001 WI App 213, ¶ 1, 247 Wis. 2d at 592–593, 634 N.W.2d at 595. Among other things, Heritage Credit Union argued that the Office's "decision is based on a policy that is invalid because it was not promulgated as a rule under Wis. Stat. ch. 227." *Heritage*

*Credit Union*, 2001 WI App 213, ¶¶ 1, 26, 247 Wis. 2d at 593, 609, 634 N.W.2d at 595, 603. *Heritage Credit Union* explained that this made no difference, and that the courts did not have jurisdiction over Heritage Credit Union's challenge because it did not serve the Credit Union Review Board:

> It is true that Heritage challenged [the Office of Credit Unions]'s decision on a variety of grounds that might loosely be characterized as "lacking legal authority"; *and we agree that a challenge because the decision was based on a policy that should have been promulgated as a rule would come within that broad characterization.* However, to accept this as a fulfillment of the requirement in WIS. STAT. § 227.40(2)(e) would, we conclude, be inconsistent with the purpose of the requirement. The purpose of the requirement is to provide an opportunity for the agency to address a challenge to the validity of a rule before the challenger may seek judicial review of the challenge. That purpose is thwarted if any challenge to a decision that can be characterized as a "lack of legal authority" permits judicial review of a rule's invalidity on grounds not raised in the administrative proceedings.
>
> We conclude that under WIS. STAT. § 227.40(2)(e), Heritage was required to present to the board its argument that [the Office of Credit Unions]'s decision was based on a policy that was invalid because it was not promulgated as required by WIS. STAT. § 227.10. Since Heritage did not, we conclude it may not obtain a judicial ruling on this issue.

*Heritage Credit Union*, 2001 WI App 213, ¶¶ 27–28, 247 Wis. 2d at 609–610, 634 N.W.2d at 603 (emphasis added). I agree with the Majority that a neutral-principled reading of *Heritage Credit Union* requires our conclusion that Mata forfeited her right to challenge the Department's policy in its Manual. But I also believe that *Heritage Credit Union* erroneously equated

a challenge to a policy that was not adopted as a rule under WIS. STAT. ch. 227 with a challenge to an adopted rule. I respectfully suggest that the supreme court set things right and remand the case so that the circuit court and we may consider the validity of the Department's policy.

¶ 38. I am authorized to state that JOAN F. KESSLER joins in this concurrence to urge the Supreme Court to review and overrule the holding in *Heritage Credit Union*.